606 So.2d 1 (1992)
Joseph K. BERTHELOT, Jr., et al., Plaintiff-Appellee,
v.
Felton G. LEDAY, Carolyn W. Leday, Certified Lloyds, and Presidential Insurance Company, Defendants-Appellants.
No. 91-571.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Guy O. Mitchell, Ville Platte, for plaintiff-appellee.
*2 David K. Balfour, Lafayette, for defendants-appellants.
Before STOKER and KNOLL, JJ., and MARCANTEL, [*] J. Pro Tem.
KNOLL, Judge.
This appeal concerns a rear end automobile collision. Felton Leday and his insurer, Certified Lloyds Insurance Company, appeal the trial court's finding of liability and assessment of damages. The trial court found Elizabeth Berthelot, the driver of the vehicle struck from behind by Felton Leday's automobile, 70% at fault and Carolyn Leday, the driver of Leday's vehicle, 30% at fault. The trial court then awarded Berthelot $2,000 for a whiplash injury and $35,000 for a temporal mandibular joint problem (TMJ).
Leday and Certified Lloyds contend on appeal that: 1) the trial court should have found Berthelot completely at fault; and, 2) the trial court abused its discretion in its assessment of damages. For the following reasons, we affirm the trial court's adjudication of fault, but amend the trial court's damage award.

FACTS
This accident occurred near the "T" intersection where the Chataignier highway meets La. 29. Berthelot stopped at the stop sign at the intersection and then made a right hand turn travelling north toward Ville Platte. The Leday vehicle was travelling north on La. 29 and was south of the Chataignier intersection when Berthelot made her right turn. Less than 100 feet north of the Chataignier intersection the Leday vehicle struck the Berthelot vehicle squarely in the back.
Berthelot was taken by ambulance from the scene, treated and released from the local hospital. The extent and course of her treatment will be detailed below.

LIABILITY
Leday and Certified Lloyds contend that the trial court erred in finding Leday only 70% at fault. They argue that Leday was totally at fault for causing the accident.
It is axiomatic that a trial court's finding of fault will not be disturbed on appeal absent a showing of manifest error. This is even more so when the trial court is faced with conflicting testimony about how an accident happened.
In the present case, the trial court was presented with conflicting testimony about the accident. Basically, Berthelot and several corroborating witnesses testified that she stopped for the stop sign and had sufficient time to make her right hand turn. Supporting this view is the physical evidence; debris indicative of the point of impact was found approximately 90 feet north of the intersection. To the contrary, Leday and one other witness testified that Berthelot made her right hand turn just before Leday entered the intersection and that Leday could not avoid the accident.
After carefully reviewing the record, we cannot say that the trial court erred in finding Leday and Berthelot both liable. Furthermore, we find the trial court's apportionment of 30% fault to Leday was not manifestly erroneous.

DAMAGES
Leday and Certified Lloyds contend that the trial court's award to Berthelot of $2,000 for a whiplash injury and $35,000 for TMJ syndrome was an abuse of discretion.
In reviewing an award for damages, the trial court is vested with much discretion. American Motorist v. American Rent-All, 579 So.2d 429 (La.1991). Before an appellate court can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making the award. In the event the appellate court finds from *3 the record an abuse of discretion, the award may be disturbed by lowering it to the highest point which is reasonably within the discretion afforded the trier of fact. Carollo v. Wilson, 353 So.2d 249 (La. 1977).
Before commencing our review, we note that the trial court stated for the record that it had experience with whiplash injuries and the TMJ syndrome. In addition, the trial court stated:
"BY THE COURT:
It's the Court's impression, at least when I stopped practicing the latter part of last year, that proved TMJ's were going at about between thirty-five, fifty and sixty thousand dollars. That's the Court's impression.
* * * * * *
BY THE COURT:
[D]o you admit that generally the award for the typical TMJ is between thirty-five and sixty thousand?
BY MR. MITCHELL, counsel for Plaintiff:
Yes, sir, that's always been my impression.
* * * * * *
BY THE COURT:
Now, on the question of her pain and suffering, the Court has listened to her testimony and certainly can sympathize with Miss Berthelot. The Court has experienced what these whiplash type of injuries. [sic] The Court has also had some experience with the TMJ syndrome, which in effect is a ruptured disk, but not in the back and not in the neck. The Court finds as a fact that she sustained a whiplash type of injury. I think it was described as a cervical strain. That is based upon the testimony of Dr. Cantu. The Court also finds that Miss Berthelot's jaw was injured in this accident.
* * * * * *
In the Court's mind the most important of general damages over here is the TMJ syndrome, which unquestionably causes a person to suffer pain and suffering physical pain and suffering, and I'm sure also causes an emotional disorder. The Court would be inclined to make an award of $50,000 to Miss Berthelot for her TMJ, but, however, since she chose not to mitigate her damages and virtually stop treatment, or at least half the treatment, and didn't follow Dr. Moise's [the treating dentist] directions, but, of course, the Court also understands that this is not out of the ordinary for people to quit the treatment because it is too burdensome or too much trouble. The Court is not saying that this is one of the top TMJ's. It is not worth a hundred and twenty-five thousand dollars, Mr. Mitchell. It's not worth what some of the general jurisprudential awards have beensixty thousand dollarsthe Court is not going to give that amount. The Court is going to make a general award of thirty-five thousand dollars for the TMJ alone. For the whiplash injury the Court finds that this woman did sustain a whiplash, but it was not a serious whiplash and is going to give two thousand dollars for the whiplash."
We hasten to remind the trial court that a damage award should be determined by the facts or circumstances peculiar to the case under consideration. Gaspard v. LeMarie, 245 La. 239, 158 So.2d 149 (1963). The primary objective of the trial judge in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case. Reck v. Stevens, 373 So.2d 498 (La.1979). Though addressing a reviewing court's improper reliance on prior awards, we find the following language in Reck appropriate and instructive to the trial court herein:
"The use of such a scale of prior awards, made for merely generically similar medical injuries, has been expressly and repeatedly disapproved by Gaspard and the succeeding jurisprudence. Such a hypothetical scale of hypothetical awards cannot be used to determine whether or not this trier of fact has abused its discretion in the award to this particular plaintiff under the facts and circumstances peculiar to this case." (Footnote omitted.)
*4 In the case sub judice, the trial court's statement on the record of its experiences with these types of injuries and its reference at the very outset to awards for similar injuries were improper. Likewise, the trial court's personal opinion about persons who discontinue medical treatment because it is burdensome and too much trouble is totally unsupported by the evidence adduced at trial.
Despite the trial court's statements, we cannot say that it abused its discretion in awarding Berthelot $2,000 for her cervical strain. Dr. Francisco Cantu treated Berthelot on the day of the accident and saw her on two occasions thereafter within one month of the accident. He opined that Berthelot suffered a cervical strain which was greatly improved by the time of his second examination. In addition, Berthelot received physical therapy for three months in an effort to conservatively treat her cervical strain. On the basis of these facts, we cannot say that the trial court abused its discretion in awarding Berthelot $2,000 for this injury.
Nevertheless, we find the trial court's award of $35,000 for Berthelot's TMJ syndrome excessive under the facts adduced at trial. Dr. Cantu recorded no complaints by Berthelot of jaw pain when he treated her shortly after the accident. Berthelot consulted Dr. Edward Moise, a dentist specializing in the treatment of TMJ, on February 23, 1988, six months after the accident.
Dr. Moise's examination revealed sensitivity of the tempero mandibular joints. He opined that based on the history given him by Berthelot that the TMJ problem was caused by the accident.
Dr. Moise initially prescribed mouth splints which were specially designed for Berthelot. The splints are designed to be worn 24 hours a day and provide a conservative method of treating TMJ. Berthelot began wearing the splints on March 15. By the 22 of March, Dr. Moise determined that Berthelot had an internal derangement within the right joint. On April 28, Dr. Moise changed Berthelot from diagnostic splint therapy to the use of repositioning splints.
Dr. Moise saw Berthelot regularly until October 21, 1988. At that time it was determined to stop splint therapy because Berthelot was not wearing the splints as directed.
Dr. Moise testified that usually by the end of six months he is able to tell whether splint therapy is working, if the patient is wearing the appliances as prescribed. Because Berthelot was not following orders, he was unable to tell the court if splint therapy was helpful. Likewise, since he had not seen her since September 1988, he could not give an opinion to the court of whether Berthelot still suffered from TMJ at the time of trial.
In assessing the $35,000 award, the trial court opined that the range of awards for TMJ was between $35,000 and $60,000. As pointed out hereinabove, there are no minimum values assigned to specific injuries; rather damages are assessed according to the individual facts and circumstances presented. The trial court also interjected that it found that it was not "out of the ordinary for people to quit treatment because it is too burdensome or too much trouble." There was no evidence to support this conclusion and therefore constituted only an opinion of the trial court. As such, it was improper.
The evidence showed that Berthelot haphazardly followed the treatment of her orthodontist for approximately six months. During that time she engaged in routine activities and even participated in a trip to Astroworld where she rode the rides. Based on adherence to her treatment regimen, Dr. Moise opined that Berthelot's TMJ problem could have been resolved within six months after the accident. Based on the record before us, we find that the most which could have been awarded for her TMJ syndrome was $15,000. Costs of this appeal are assessed one-half to appellee and one-half to appellant.
For the foregoing reasons, the judgment of the trial court is affirmed in all aspects except to reduce the damage award for *5 Elizabeth Berthelot's TMJ injury to $15,000.
AFFIRMED AS AMENDED AND RENDERED.
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.