I THIBODEAUX, Judge.
Bert J. Wainwright, individually and as administrator of the estate of his minor son, John Scott, appeals the trial court’s judgment, issued pursuant to a jury verdict, alleging the court erred in awarding inadequate medical expenses and no awards for general damages, future counseling expenses, future tutorial services, and loss of consortium. Mr. Wainwright also asserts that the jury erred in assessing him with one percent of the fault.
|2We amend the award of $1,500 for medical expenses incurred by the Wainwrights and, instead, award the sum of $7,372.00. We also amend the jury’s denial of general damages and award an amount of $40,000. We affirm in all other respects.
I.

ISSUES

We shall consider:
1. whether John Scott Wainwright and his parents, Bert and Jenna Cay Wainwright, are entitled to general damages;
2. whether $1,500.00 was an adequate award for medical expenses incurred by John Scott Wainwright;
3. whether Bert J. Wainwright was appropriately apportioned one percent of fault;
4. whether the jury erred by not awarding an amount for future counseling expenses for John Scott;
5. whether the jury erred by not awarding expenses for future tutorial services; and,
6. whether the jury erred by not awarding Bert and Jenna Cay Wainwright an amount for loss of consortium.
*1080 II.

FACTS

Pharmacist Romona Fontenot and her employer, Walgreen Louisiana Company, Inc., admit that on March 7, 1996, Ms. Fontenot erroneously filled a prescription for five milligrams of liquid Prozac, an anti-depressant, for eight-year-old John Scott Wainwright with twenty milligrams of the medicine. However, the defendants-deny that the mistake resulted in John Scott’s spasmodic behavior and his subsequent hospitalization at Lake Charles Memorial Hospital from March 12 to | ¡¡March 13, 1996. Hence, the dominant issue in this case is the extent of John Scott’s damages caused by the erroneously filled prescription.
John Scott had previously been treated for post-traumatic stress disorder arising out of a kitchen fire that occurred in the Wainwright home in July, 1995. After the fire, Bert and Jenna Cay Wainwright observed that John Scott was depressed and anxious and developed compulsive behaviors. John Scott would quarrel with his parents after the kitchen fire; however, the fire apparently did not affect his schoolwork. According to his parents, he remained a stellar student. After the Prozac overdose, however, John Scott’s school performance plummeted. According to his teachers, John Scott became unable to follow and to complete instructions and his achievement test scores plunged.
Dr. John Bambenek, a psychiatrist, prescribed an anti-depressant medication, Imipramine, for John Scott’s previous disorder. In March 1996, Dr. Bambenek modified John Scott’s medication and prescribed Prozac. On March 7, 1996, Bert Wainwright went to Walgreen’s Drug Store to have the Prozac prescription of five milligrams filled. Mr. Wainwright waited for the prescription to be filled and spoke to Romona Fontenot, the pharmacist, at the counseling window and observed that Prozac “was a very powerful medicine.”
On Saturday, March 9, 1996, after reading the dosage instructions on the bottle label, Bert Wainwright began administering the Prozac to John Scott once daily, during breakfast. Within an hour of receiving his medication, John Scott became irritable and agitated. He became belligerent with his parents, and he experienced uncontrollable crying episodes. This conduct continued for several hours until he became exhausted. The series of rage and weariness continued throughout the night.
|40n Sunday morning, Bert Wainwright gave John Scott another twenty milligram dose of the Prozac in accordance with the labeled instructions. The irritability and the agitation arose again. The Wainwrights were unable to get John Scott dressed for 10:30 mass. Mrs. Wainwright and one of John Scott’s sisters had to remain at home with him while his father and his other sisters attended mass. While his father and his sisters were at church, John Scott became aggressive toward his mother. Mrs. Wainwright testified that he attempted to attack her with a fireplace poker and, when she and his sister attempted to hold him, he catapulted his mother over his head. John Scott slammed his head backwards and he scratched his mother and his sister as they restrained him. This tumultuous conduct continued until the others returned from mass.
After suspecting the Prozac was the source of John Scott’s erratic and uncontrollable behavior, Mrs. Wainwright called the Walgreen’s pharmacy and spoke to Sharon Courrege, the pharmacy manager. Mrs. Wainwright explained John Scott’s behavior to Ms. Courrege, and she requested that Ms. Courrege locate the original prescription from Dr. Bambenek to compare it with the label on the bottle. Ms. Courrege verified that Dr. Bambenek prescribed twenty milligrams of liquid Prozac. During trial, however, Ms. Courrege admitted she did not compare the prescription with the label. She also testified Mrs. Wainwright’s explanation of John Scott’s behavior was not extensive and she did not perceive a sense of urgency.
*1081 After receiving verification from Ms. Courrege on Sunday, Bert Wainwright administered one teaspoonful, or twenty milligrams, of Prozac to John Scott on Monday morning. Because John Scott did not have school that day, Mr. Wainwright took him to his office that morning. In the midst of a conference, Mr. Wainwright had to call his wife to leave work and come to his office because John pScott had gone into a rage. John Scott was extremely irritable and combative with his father. When his mother arrived, John Scott escaped from her and proceeded to hack a row of bushes outside his father’s office. After narrowly avoiding being struck with a stick by his young son, Bert Wainwright eventually was able to restrain John Scott to the ground.
John Scott already had been scheduled to see Dr. Charles Monlezun, his therapist, that Monday afternoon. The Wainwrights informed the therapist of their son’s rages throughout the weekend and on that day. Dr. Monlezun then contacted Dr. Bambe-nek, who then notified him that he had prescribed only five milligrams, not twenty milligrams, of liquid Prozac. Dr. Bambe-nek advised the Wainwrights to immediately transport John Scott to the emergency room. Because the emergency room staff of Lake Charles Memorial Hospital responded too slowly, John Scott was taken to the Children’s Clinic. Upon arrival, Dr. David Wallace immediately admitted John Scott into the hospital.
John Scott remained in Lake Charles Memorial Hospital overnight for observation. His vital signs were monitored and his blood was analyzed. John Scott was released when results of tests taken returned negative.
According to his teachers, after these traumatic events, John Scott’s performance in school and on standardized tests plunged. He had difficulty following instructions and he had to relearn simple skills.
III.

LAW AND DISCUSSION

Standard of Review
Before an appellate court can disturb a trial court award, the record must clearly reveal an abuse of discretion. Only after finding such abuse can the appellate | ficourt modify the award, and then only to the extent of lowering it to the highest point or raising it to the lowest point which is reasonably within the trial court’s discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). However, when the trier of fact fails to award damages, the abuse of discretion standard of review does not apply. Rather, an appellate court reviews the quantum issue de novo. Mart v. Hill, 505 So.2d 1120 (La.1987); Phelps v. White, 94-267 (La.App. 3 Cir. 10/5/94); 645 So.2d 698, writ denied, 95-151 (La.3/17/95); 651 So.2d 272.
It is clearly an error of law to award special damages and refuse to award general damages for injuries that present objective symptoms. Bowers v. Viator, 625 So.2d 355 (La.App. 3 Cir.1993), writ denied, 93-3023 (La.2/4/94); 633 So.2d 171. The failure to award any general damages when special damages for medical expenses are awarded is erroneous as a matter of law. Schlette v. Washington, 99-0234 (La.App. 4 Cir. 9/22/99); 752 So.2d 197. In awarding general damages where a trial court has awarded none, appellate courts are not constrained to the guidelines set forth under Coco to award either the lowest or the highest amount that would have been within the discretion of the trial court. Instead, we are empowered to award an amount which represents appropriate compensation for the damages revealed in the record. Thompson v. Louisiana Dep’t of Transp. and Dev., 93-1294 (La.App. 3 Cir. 6/29/94), 639 So.2d 864, writ denied, 94-2047 (La.11/4/94), 644 So.2d 1052; Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App. 2 Cir. 5/10/95); 661 So.2d 503.
*1082 General Damages
“ ‘General damages’ are those which cannot be fixed with pecuniary exactitude; they involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle which cannot be definitely |7measured in monetary terms.” Craven v. Universal Life Ins. Co., 95-1168, p. 17 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, 1368, writ denied, 96-1332 (La.9/27/96); 679 So.2d 1355; Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978). We must evaluate each case according to its own particular circumstances. Berthelot v. Leday, 606 So.2d 1 (La.App. 3 Cir. 1992).
In this case, the jury awarded $1,500.00 for medical expenses but did not award any general damages. The jury cannot award special damages for personal injuries incurred in an accident and refuse to award any amount in general damages for injuries that present objective symptoms. Bowers v. Viator, 625 So.2d 355 (La.App. 3 Cir.1993).
Dr. Charles Monlezun, an expert in clinical social work who had been treating John Scott for post-traumatic stress disorder stemming from a kitchen fire that occurred in the Wainwright home in July 1995, concluded that John Scott’s symptoms were different and more distinguished after the Prozac overdose. In his experience in observing adults and children take medication, he testified that he was concerned about John Scott’s complaints of the headaches that occurred pri- or to the tantrums. Dr. Monlezun was troubled by the intensity of John Scott’s behavior problems. As we have previously discussed, Dr. Monlezun contacted Dr. Bambenek and he subsequently discovered that John Scott had been taking more than Dr. Bambenek had prescribed.
Ms. Margretta Ann Manuel, John Scott’s second grade teacher, testified that before the Prozac overdose, John Scott was a peer tutor, one of her students who helped other children. She described him as a “very happy, easy-going young man.” John Scott mastered his skills and worked independently. These positive attributes existed prior to the Prozac overdose. After the overdose, according to Ms. Manuel, Is John Scott “became very frustrated with simple tasks he had previously been able to do: [WJhen he returned, I had to go back and teach him how to add and subtract.” John Scott could no longer understand the simple math concepts that he had previously learned. He also experienced problems in reading comprehension and language. These changes compelled Ms. Manuel to schedule a conference with Bert and Jenna Cay Wainwright to express her concern for John Scott’s changes. She informed them of his short attention span and his inability to remain on task. Ms. Manuel testified that John Scott was a changed person. “It was like there was another child coming into my classroom.” Ms. Manuel also testified that John Scott’s scores on standardized tests administered between the second and fifth grades decreased significantly.
Ms. Joanna Dietrich, John Scott’s fourth grade teacher, explained that John Scott had difficulty with long-term memory. He also had complications with concentration, working on tasks alone, and with completing tasks that involved multiple steps.
Ms. Pamela Dupre, John Scott’s fifth grade teacher, witnessed problems such as frustration and the inability to perform schoolwork.
John Scott’s objective symptoms appeared as a result of an improperly filled prescription. Louisiana Civil Code Article 2315 provides, “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Thus, Walgreen Louisiana, as employer of Romona Fontenot and Sharon Courrege, and these two pharmacists are liable for their negligent conduct. Also, as pharmacists, Ms. Fontenot and Ms. Cour-rege are held to a high standard of care. In Trumbaturi v. Katz & Besthoff, 180 La. 915, 923, 158 So. 16, 19 (1934) quoting Walton v. Booth, 34 La.Ann. 913 (1882):
*1083 |9In the discharge of their functions, druggists and apothecaries, persons dealing in drugs and medicines, should be required not only to be skilful, but also exceedingly cautious and prudent, in view of the terrific consequences which may attend, as they have not un-frequently in the past, the least inattention on their part. Cooley on Torts, pp. 75,76; 648-649.
The defendants were indisputably negligent. The record, however, reveals that John Scott had a history of hostile and unusual behavioral characteristics that required counseling and psychiatric attention prior to the overdose. These problems were caused by a fire witnessed by John Scott in the family home in July 1995. The presence of these characteristics prior to the Prozac overdose is vital in determining an award for general damages. Another important factor in assessing general damages is the deposition testimony of Dr. Linda Ewing-Cobbs, a neuropsychologist for the plaintiffs. Dr. Cobbs observed that John Scott’s hospitalization alone did not have such a psychological effect such that he lost his academic skills. She asserted “the hospitalization increased his level of stress and the stress and anxiety might have interfered with his academic skills.”
Dr. Bambenek, John Scott’s psychiatrist who prescribed the Prozac, testified the side effects of Prozac do not include an effect on cognition or loss of concentration.
The preexisting behavioral traits of John Scott and the assertions of Dr. Cobbs and of Dr. Bambenek militate against what we find would otherwise justify a large award of general damages. The improper filling of the Prozac prescription caused the hospitalization of John Scott. His parents, teachers and therapist all testified about the negative impact of the overdose on John Scott. It is doubtless that his eccentric behavior was heightened and his educational acumen suffered as a direct result of the improperly prescribed medication. While we believe this to be true, the intensity and depth of the aggravated injury was diminished by the uncontradicted | ^testimony of Dr. Cobbs and Dr. Bambe-nek. Accordingly, we feel that an award of $40,000 in general damages is warranted.
Medical Expenses
Bert J. Wainwright contends the jury failed to award the full amount of medical expenses incurred by John Scott. The jury determined the plaintiffs were entitled to $1,500.00 for medical expenses.
Ordinarily, a plaintiff may recover reasonable medical expenses, past and future, which he incurs as a result of an injury. However, a plaintiff must prove the existence of the injuries and a causal connection between those injuries and the accident. The test is whether the plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3 Cir.), writ denied, 565 So.2d 450 (La.1990); Wells v. Allstate Ins. Co., 510 So.2d 763 (La.App. 1 Cir.), writ denied, 514 So.2d 463 (La.1987). When an allegation has been made by a plaintiff that he has incurred medical expenses and that allegation is supported by a bill, unless there is reasonable suspicion or sufficient contradictory evidence that the bill is unrelated to the accident, it is sufficient to support the inclusion of the item in the judgment. Brightman v. Regional Transit Auth., 543 So.2d 568, 570-71 (La.App. 4 Cir.1989).
In this case, the record clearly reveals that Mr. Wainwright incurred medical expenses in the amount of $7,372.00. The expenses are as follows:
Lake Charles Memorial Hospital .. $1,035.00
Dr. John Bambenek. $ 140.00
Dr.A.L. Cook. $ 39.00
Prozac prescription. $ 10.50
Dr. Charles Monlezun. $6,147.50
TOTAL. $7,372.00
NThese medical expenses are recoverable in full.
*1084 Apportionment of Fault
Bert J. Wainwright argues the jury erred by allocating one percent fault to him. He submits that Walgreen Louisiana and its pharmacists are wholly at fault because Romona Fontenot improperly filled the Prozac prescription and Sharon Courrege incorrectly verified the prescription.
The trier of fact is owed some deference in allocating fault. The allocation of fault pursuant to the comparative fault article La.Civ.Code art. 2323 is a factual determination. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96); 666 So.2d 607.
To determine the degree of fault, the court should consider the causal relationship between the conduct and the damage, and the nature of the parties’ conduct as determined by factors including: 1) whether the conduct resulted from inadvertence; 2) magnitude of the risk created by the conduct; 3) the significance of the intended result of the conduct; 4) the relative capacities of the actors; and 5) extenuating circumstances requiring haste. Watson v. State Farm, Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1985).
As we evaluate the parties’ conduct, we determine that the jury was correct by apportioning ninety-nine percent of fault to Walgreen and one percent of fault to Bert J. Wainwright. Walgreen’s pharmacist, Ms. Romona Fontenot, was negligent in improperly filling the five milligram prescription of Prozac; however, Mr. Wainwright failed to reasonably respond to the error. Given the capacities of Romona Fontenot and of Bert Wainwright, we affirm the jury’s decision to allocate ninety-nine percent of fault to Walgreen Louisiana and one percent of fault to Bert. J. Wainwright.
h ¡¿Future Counseling Expenses
The plaintiffs submitted a total of $14,051.20 for future counseling. We find the jury did not err by not awarding an amount for these services. The record does not support an award for future counseling expenses. Dr. Monlezun had become John Scott’s counselor as a result of an unrelated incident, the July 1995 house fire. Dr. Monlezun also testified that he would have continued to treat John Scott for the fire incident, regardless of the Prozac episode. Consequently, we are not inclined to award future counseling expenses.
Future Tutorial Services
The Wainwrights seek $76,110.00 for John Scott’s future tutorial services and contend the jury erred by not awarding an amount for these services. We find the record does not permit such an award. Bert and Jenna Cay Wainwright are both educators who owned and operated a child development center in Lake Charles and have successfully served as tutors for other students. Both are highly qualified in administering educational assistance to John Scott. Also, Dr. Linda Ewing-Cobbs asserted in her deposition that had John Scott received the prescription of five milligrams, he would have had the same physiological reaction as he did when he got the twenty milligrams, absent the hospitalization. His academic scores would have changed. She opined that it was the stress of the hospitalization, not the overdose, which caused John Scott’s academic decline. Dr. Cobbs concluded the “cognitive difficulties were not related to any type of organic damage from an overdose experience.”
Dr. William George, a doctor of pharmacology, testified that Prozac takes approximately one week of administration to reach a “steady state.” He also concluded that Prozac has no effect on cognitive skills or on learning.
|13A1so, Dr. Monlezun testified that he did not have a note of the Wainwrights discussing any problems with John Scott’s learning abilities until May 13, 1996, approximately two months after the Prozac incident.
*1085 As such, we affirm the jury’s decision not to award an amount for future tutorial services.
Loss of Consortium
Finally, Bert J. Wainwright asserts as error the jury’s failure to award him and his wife, Jenna Cay Wainwright, damages for loss of consortium.
‘Whether a party is entitled to loss of consortium damages is a question of fact, and a finding of fact cannot be overturned on appeal absent manifest error.” Wehbe v. Waguespack, 98-475, p. 17 (La.App. 5 Cir. 10/28/98); 720 So.2d 1267, 1277, writs denied, 98-2907, 98-2970 (La.1/15/99); 736 So.2d 211, 213. The evidence reflects limited damage to Mr. and Mrs. Wainwright. Based on the record, we And the jury did not err in denying Bert and Jenna Cay Wainwright’s claim for loss of consortium.
IV.

CONCLUSION

Accordingly, we award general damages to the plaintiffs in the amount of $40,000 and medical expenses in the amount of $7,372.00. We affirm the allocation of ninety-nine percent of fault to Walgreen Louisiana and one percent to Bert J. Wainwright. We also affirm the denial of awards for future counseling and tutorial expenses and for loss of consortium.
All costs of trial and appeal are assessed to the defendants.
AMENDED IN PART; AFFIRMED IN PART AND RENDERED.
SULLIVAN, J., concurs in part and dissents in part with written reasons.