774 So.2d 70 (2000)
Bert J. WAINWRIGHT, et al.
v.
Romona FONTENOT, et al.
No. 00-C-0492.
Supreme Court of Louisiana.
October 17, 2000.
*71 Jack Etherton Truitt, Metairie, Counsel for Applicant.
James J. Cox, Kevin Louis Camel, Lake Charles, Counsel for Respondent.
KIMBALL, J.
At issue in this delictual action is whether a factfinder errs as a matter of law when it declines to award general damages after finding defendant at fault for plaintiffs injuries and awarding special damages for plaintiffs medical expenses. Following a jury trial in the Fourteenth Judicial District Court for the Parish of Calcasieu, the jury completed a Jury Verdict Form in which it found that the conduct of defendant was the legal cause of injuries sustained by plaintiffs' minor child. The jury awarded plaintiff $1,500.00 in medical expenses but no general damages. On appeal, the third circuit concluded that the jury had committed legal error in awarding medical expenses but declining to award general damages for injuries that exhibited objective symptoms. The court then increased the medical expenses award to $7,372.00 and awarded general damages of $40,000.00, Wainwright v. Fontenot, 99-582 (La.App. 3 Cir. 12/8/99), 750 So.2d 1077. We granted writs, 00-0492 (La.4/20/00), 759 So.2d 769, and, finding that there is no inconsistency in the awards made by the jury in this case, now reverse.

FACTS
In July 1995, there was a late-night grease fire in the kitchen of the Wainwright home. Bert John Wainwright ("Bert"), the father of John Scott Wainwright ("John Scott"), was burned while putting out the fire. Soon thereafter, John Scott began to exhibit signs of stress.[1] *72 When John Scott's anxiety did not subside, Bert and John Scott's mother, Jenna Cay Wainwright ("Jenna"), sought counseling for John Scott with Dr. Charles Monlezun, a clinical social worker.
Dr. Monlezun first saw John Scott on February 7, 1996, and diagnosed him with post-traumatic stress disorder. Following several visits with John Scott, Dr. Monlezun referred John Scott to Dr. John Bambanek, a board-certified child psychiatrist. On March 7, 2000, Dr. Bambanek prescribed Prozac[2] for John Scott. Dr. Bambanek ordered five milligrams of Prozac once daily, which he testified in his video-taped trial deposition was about one-quarter the normal adult dose of twenty milligrams. The Wainwrights filled Dr. Bamabanek's prescription at a pharmacy operated by Walgreen Louisiana Company, Inc. ("Walgreen").
Walgreen does not dispute that, on March 7, 1996, pharmacist Romona Fontenot ("Fontenot") incorrectly filled the prescription by placing on the label instructions for one dose of twenty milligrams per day rather than the five milligrams per day prescribed by Dr. Bambanek. On the morning of March 9, 1996 Bert gave John Scott his first twenty milligram dose of Prozac. The Wainwrights have argued throughout that, almost immediately thereafter, John Scott's emotional state worsened and that he became increasingly combative and aggressive.
Bert gave John Scott a second twenty milligram dose on the morning of March 10, 1996. Again, the Wainwrights argue, John Scott became irrational and violent, threatening his mother with a fireplace poker and indicating that he would do harm to himself. That same day, Jenna called the Walgreen pharmacy and spoke to the pharmacy manager, Sharon Courrege ("Courrege"). Jenna asked Courrege to confirm that the Wainwrights were giving John Scott the correct dosage by checking Dr. Bambanek's original prescription. Courrege admitted at trial that she did not check the original prescription, but told Jenna that she had done so and that twenty milligrams was the dosage prescribed by Dr. Bambanek.
The following day, March 11, 1996, the Wainwrights gave John Scott a third twenty milligram dose of Prozac. The Wainwrights maintain that John Scott again became combative and violent, ultimately requiring Bert to physically restrain him. That afternoon, the Wainwrights consulted Dr. Monlezun about John Scott's erratic behavior over the weekend. Dr. Monlezun in turn called Dr. Bambanek, who confirmed that he had prescribed only five milligrams of Prozac, not the twenty milligrams indicated on the label printed by Fontenot. The Wainwrights then took John Scott to the Children's Clinic in Lake Charles. John Scott was admitted for observation and testing and released the afternoon of March 12, 1996.
On February 6, 1997, Bert and Jenna Wainwright filed suit, individually and on behalf of John Scott, naming as defendants Fontenot, Walgreen and Kemper National Insurance Company, Walgreen's liability insurer.[3] Plaintiffs sought general damages as well as damages for medical expenses, past and future counseling expenses, and loss of consortium for both Bert and Jenna, all of which they urged stemmed from Walgreen's negligence in filling the prescription and John Scott's subsequent overdose. They also urged that John Scott's academic performance had suffered as a result of the overdose.
*73 The case was tried to a jury in the Fourteenth Judicial District Court for the Parish of Calcasieu. In its answers to a Jury Verdict Form, the jury found that Walgreen's conduct was the legal cause of the injuries to John Scott, assessing 99% of the fault to Walgreen and 1% to Bert. The jury awarded plaintiffs $1,500.00 in medical expenses, but declined to award general damages for John Scott or loss of consortium damages to Bert and Jenna. The jury also declined to make any award for future counseling or tutorial expenses.[4]
Plaintiffs timely appealed to the third circuit, urging that the jury erred in awarding inadequate medical expenses, in assigning fault to Bert, and in failing to award general damages, future counseling and tutorial expenses, and loss of consortium damages. In a published opinion, the third circuit panel amended the trial court judgment, increasing the medical expenses award from $1,500.00 to $7,372.00.[5] The court of appeal also awarded general damages for John Scott's injuries, finding that it was legal error for the jury to award medical expenses while declining to award general damages for injuries that presented objective symptoms. Wainwright, 750 So.2d at 1081 (citing Bowers v. Viator, 625 So.2d 355 (La.App. 3 Cir.1993), writ denied 93-3023 (La.2/4/94), 633 So.2d 171; Schlette v. Washington, 99-0234 (La.App. 4 Cir. 9/22/99), 752 So.2d 197).
In assessing quantum, the court of appeal reasoned that "when the trier of fact fails to award damages, the abuse of discretion standard does not apply. Rather, an appellate court reviews the quantum issue de novo." Wainwright, 750 So.2d at 1081 (citing Mart v. Hill, 505 So.2d 1120 (La.1987); Phelps v. White, 94-267 (La. App. 3 Cir. 10/5/94), 645 So.2d 698, writ denied, 95-151 (La. 3/17/95), 651 So.2d 272). The majority of the three-judge panel concluded that, based on the trial testimony as to the negative effect of the overdose on John Scott, a general damages award of $40,000.00 was warranted. Wainwright, 750 So.2d at 1083.
One judge concurred in part and dissented in part. He agreed with the majority that the jury had erred in refusing to grant general damages in this case, but dissented as to the increased medical expenses award and the amount of the majority's general damages award. Id. at 1085. In his view, plaintiffs were entitled to "a general damage award of no more *74 than $2,500 for this regrettable but minor episode." Id.

LAW AND DISCUSSION
The fundamental principle of tort liability in Louisiana is that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ.Code art. 2315. Thus, in a negligence action under article 2315, the plaintiff bears the burden of proving fault, causation and damages. Buckley v. Exxon Corp., 390 So.2d 512, 514 (La.1980). "One injured through the fault of another is entitled to full indemnification for damages caused thereby." State Farm Mut. Auto. Ins. Co. v. Berthelot, 98-1011 (La.4/13/99), 732 So.2d 1230, 1234. "[A] defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991).
The term "damages" refers to "pecuniary compensation, recompense, or satisfaction for an injury sustained." Fogle v. Feazel, 201 La. 899, 10 So.2d 695, 698 (1942). The most common type of damages in the delictual context is compensatory damages, which encompasses those damages "designed to place the plaintiff in the position in which he would have been if the tort had not been committed." Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996) (footnotes omitted).
Compensatory damages are further divided into the broad categories of special damages and general damages. "Special damages are those which either must be specially pled or have a `ready market value,' i.e., the amount of the damages supposedly can be determined with relative certainty." Id. § 7-2 (footnotes omitted). Included under the heading of special damages are the plaintiff's medical expenses incurred as a result of the tort. 1 DAMAGES IN TORT ACTIONS § 3.02[2][c][i] (Matthew Bender 2000). On the other hand, "[g]eneral damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty. These include pain and suffering[.]" Maraist & Galligan, supra, § 7-2.
The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). Moreover,
before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.
Coco v. Winston Indus., Inc., 341 So.2d 332, 334 (La.1977) (internal citations omitted).
There is no question that the abuse of discretion standard of review applies when an appellate court examines a factfinder's award of general damages. We are here, however, faced with the somewhat anomalous situation in which a jury has determined that the defendant is both legally at fault for the plaintiff's injuries and liable to him for his medical expenses incurred, yet has declined to make any award at all for general damages, i.e., pain and suffering. Such a verdict has not heretofore been addressed by this court.
The Wainwrights, relying on numerous decisions from the courts of appeal, assert that there is a well-defined rule in Louisiana that it is legal error to award special *75 damages without general damages, and that the jury thus committed legal error in this case. The Wainwrights are correct in their assertion that some of the courts of appeal of this state have held it was legal error for the jury to award special damages without awarding general damage. A close reading of the lower court decisions addressing this issue, however, reveals that what the Wainwrights and the court below assert is a rule is actually no rule at all. Rather, what the courts of appeal have done in cases such as this one is correct jury verdicts that were illogical and inconsistent. That is, the courts of appeal, while purporting to apply a bright line rule, have actually recognized that a jury verdict awarding medical expenses but simultaneously denying damages for pain and suffering will most often be inconsistent in light of the record. The courts have acknowledged, however, that under certain circumstances the evidence of record supports both an award of medical expenses and a concurrent denial of general damages. Effectively, then, the ultimate question has been whether the factfinder made inconsistent awards and thus abused its discretion.
For example, in Robinson v. General Motors Corp., 328 So.2d 751 (La.App. 4 Cir.1976), one passenger in an automobile accident suffered a broken nose and bruised chest, another a bruised leg and ribs, and the third had a visible bump on the head. Id. at 752. In a special verdict, the jury awarded plaintiffs the exact amount of their medical expenses and awarded one passenger a day's lost wages, but made no award of general damages. Id. at 751. The court found that the jury's denial of general damages was erroneous: "If a jury deems missing work or incurring certain medical expenses unjustified, it may disallow those items, but it may not refuse general damages to plaintiffs with objective injuries." Id. at 752. Similarly, in Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581 (La.App. 5 Cir.1989), the jury found defendant 45% at fault for causing plaintiffs injuries, and awarded sums for property damage, lost wages and medical expenses related to a severe cervical and lumbosacral sprain. Id. at 583. However, the jury made no award of general damages. Id. The fifth circuit recognized the jury's great discretion in determining damages, but concluded that "it is error of law for the jury to award special damages without awarding an amount for general damages as well." Id. at 585. In Charles v. Cecil Chatman Plumbing and Heating Co., 96-299 (La.App. 3 Cir. 10/23/96), 686 So.2d 43, the court reviewed a jury verdict awarding plaintiff past medical expenses but no general damages for pain and suffering. While causation and the extent of plaintiff's injuries were contested, several doctors testified as to the physical effects of the collision on the plaintiff. The court observed that, "[w]hile the jury has wide discretion in assessing the defendant's conceded damages, it is a clear error of law to award special damages for a personal injury and yet, at the same time, refuse to award general damages for injuries that present objective symptoms." Id. at 44 (emphasis added). Accord, Bowers v. Viator, 625 So.2d 355, 358 (La.App. 3 Cir.1993); Labauve v. Central Mut. Ins. Co., 491 So.2d 146 (La.App. 3 Cir.1986).
In contrast to the cases discussed above, the third circuit in Coleman v. U.S. Fire Ins. Co., 571 So.2d 213 (La.App. 3 Cir. 1990), found there was no error in the jury's award of medical expenses but denial of general damages. There, plaintiff was injured in an automobile collision. While defendant's vehicle was stopped behind plaintiffs at a traffic signal, defendant allowed his vehicle to roll forward, striking plaintiffs rear bumper. Id. The accident resulted in no damage to either vehicle, but plaintiff went to the hospital, where she was examined and released. Id. at 215. Following a trial on the merits, the jury awarded plaintiff $300.00 in special damages for medical expenses, but made no award for general damages. Id. at 214. The panel of the third circuit *76 concluded that the jury could have found that, while plaintiff sustained no injuries, she was justified in going to the hospital for an examination following the accident. Id. at 215 The court thus concluded that there was no inconsistency in the jury's award of medical expenses for the hospital visit and denial of an award for pain and suffering. Id. Similarly, in Olivier v. Sears Roebuck & Co., 499 So.2d 1058 (La. App. 3 Cir.1986), the third circuit again affirmed a jury's award of medical expenses for an examination and denial of general damages where there was serious question as to whether the plaintiff had sustained any injury in the accident. The court observed that "[t]he jury could have reasonably found that, although Mrs. Olivier did not receive any injuries in the accident, she was justified in getting a checkup." Id. at 1063.
While at first glance these two lines of cases appear to be contradictory, close scrutiny of the court's rationale in each of the cases cited reveals that the particular facts of each case are ultimately determinative. There is no question that the rationale of the Robinson line of cases relied upon by the court below has been employed by the courts of appeal in many instances. And we do not dispute that, as a general proposition, a jury verdict such as the one currently before us may be illogical or inconsistent. However, as demonstrated by the Coleman and Olivier cases, a jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a de novo review of the record.
The doctrine supports the proposition that there is no bright line rule at work here. In 1 DAMAGES IN TORT ACTIONS § 4.04[4][a] (Matthew Bender 2000), the authors note that "a few jurisdictions most notably Louisianaallow their appellate courts to correct an erroneous `zero' verdict where an award for pain and suffering would be warranted, and could be evaluated, by the evidence of record." (footnotes omitted) Maraist & Galligan, supra § 7-2, also note that "[o]ne way the factfinder may abuse its discretion is by awarding special damages without awarding general damages." (footnote omitted) The writers have noted that a reviewing court's reversal of the jury's finding must be based on the facts in the record.
Additionally, our survey of the approaches used by our sister states further buttresses the conclusion that a verdict awarding medical expenses yet denying general damages is not per se invalid. While the courts of many states have acknowledged that such a verdict can be erroneous, they generally have rejected the factfinder's determination as to damages only where the failure to award general damages is factually inconsistent with a reasonable reading of the record, giving due deference to the jury's findings of fact. See, e.g., Moody v. RPM Pizza, Inc., 659 So.2d 877 (Miss.1995); Robertson v. Stanley, 285 N.C. 561, 206 S.E.2d 190 (1974); Laughlin v. Lamkin, 979 S.W.2d 121 (Ky. Ct.App.1998) Prescott v. Kroger, 877 S.W.2d 373 (Tex.Ct.App.1994).
Numerous other courts have declined to overturn such "zero" awards, relying on the reasonableness of the jury's conclusions as to the evidence. As the Supreme *77 Court of Pennsylvania observed in Catalano v. Bujak, 537 Pa. 155, 161, 642 A.2d 448, 451 (1994):
In this case, the jury apparently did not believe that pain and suffering, for example, or missed work, resulted from the injury which [defendant] caused. It did believe that medical and incidental expenses were incurred as a result of the injury, and it awarded damages for those claims. The jury made its determinations, and it is not for this court, absent evidence of unfairness, mistake, partiality, prejudice, corruption, exorbitance, excessiveness, or a result that is offensive to the conscience and judgment of the court, to disturb them.
See also, e.g., Fisher v. Davis, 601 N.W.2d 54 (Iowa 1999); Nesseth v. Omlid, 574 N.W.2d 848 (N.D.1998); Catalano, supra; Gould v. Mans, 82 S.D. 574, 152 N.W.2d 92 (1967); Dunbar v. Thompson, 79 Hawai`i 306, 901 P.2d 1285 (Ct.App.1995); Bullard v. B.P. Alaska, Inc., 650 P.2d 402 (Alaska 1982); Een v. Rice, 637 So.2d 331, 333 (Fla.App.1994).
"In a suit for damages, it is the plaintiff's burden to prove the damage he suffered as a result of defendant's fault[.]" Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La.1988). The onus was thus on the Wainwrights to affirmatively establish, by a preponderance of the evidence, that John Scott was entitled to general damages for pain and suffering. Here, we find no abuse of discretion in the jury's failure to award general damages. Simply put, there was ample evidence from which the jury could conclude that John Scott's brief overdose and hospitalization resulted in no compensable pain and suffering.
First, the medical testimony adduced at trial indicated that, while Dr. Bambanek intended that John Scott receive only a five milligram dose of Prozac, the higher twenty milligram dose he received was not inappropriate for a child of his age. The medical testimony further established that Prozac does not reach an effective dosage level, or "steady state" in a patient's bloodstream, until well after three days of exposure. A reasonable juror might have concluded from this evidence that John Scott could not have begun to exhibit Prozacrelated symptoms within hours of his first dose, as his parents claimed he did.
The only evidence offered as to John Scott's erratic behavior over that weekend was the uncorroborated testimony of his parents. Furthermore, there was testimony that John Scott had exhibited similar violent and manic tendencies in the months following the fire in the family home. The jury could have chosen not to believe the testimony of Bert and Jenna, or could have concluded that John Scott's behavior during the weekend of the overdose was actually no worse than it had been prior to the overdose. As we have often observed, we are reluctant to disturb such credibility determinations by the finder of fact. Canter v. Koehring Co., 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330 (1979).
Finally, the hospital records indicated that John Scott was alert, attentive and calm on his arrival and throughout his stay at Lake Charles Memorial Hospital. John Scott was discharged after one night of observation. The jury could have reasonably concluded that placing John Scott in the hospital was a reasonable precaution for prudent parents to take after finding out that their son had received a twenty milligram dose of Prozac instead of a five milligram dose. Since Walgreen admitted its liability for the overdose, the jury would have been justified in awarding the Wainwrights medical expenses incurred in insuring that John Scott had suffered no adverse effects from the medication. Such a finding by the jury is consistent with the determinations made by the factfinders in Coleman and Olivier, supra.
Moreover, as the jury concluded that John Scott was entitled to no general damages, it could similarly have concluded that many of John Scott's medical expenses *78 were unrelated to the Prozac incident. The jury's original award of $1,500.00 in medical expenses is consistent with its finding that the only adverse effect on John Scott from the Prozac incident was his one-night stay in the hospital.[6] We cannot say that, based on the record evidence, the jury was wrong to conclude that such a limited award was warranted in this case. We thus reinstate the jury's original award of $1,500.00 in medical expenses.
Our ruling here does not mean that we would reach the same conclusions as the jury were we charged with the factfinding function. However, it is not for us to substitute our findings for the jury's in light of the existence of permissibly conflicting views of the evidence in this case. Our review of the record indicates the award of $1,500.00 for medical expenses is not inconsistent with its denial of general damages, and we therefore conclude the jury committed no abuse of discretion.

DECREE
For the reasons cited herein, the opinion of the court of appeal in this matter is reversed, and the judgment of the trial court is reinstated.
REVERSED. JUDGMENT OF TRIAL COURT REINSTATED.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
JOHNSON, J., dissents and assigns reasons.
LEMMON, J., Subscribes to the Opinion and Assigns Additional Reasons.
When a tortfeasor causes an occurrence which subjects the tort victim to the reasonable possibility of serious injury, the tortfeasor is liable for the reasonable expenses incurred by the tort victim in consulting appropriate medical personnel and in insuring that adverse effects of the occurrence will be prevented or minimized.[1] This liability for medical consultation or treatment ensues from the tort even if the tort victim is fortunate enough that serious injury does not actually result.[2]
In the present case, the jury recognized the tortfeasor's responsibility for consultation and treatment immediately following the tort, but (to the benefit of the tortfeasor) limited that responsibility (essentially to the brief hospitalization) because of the factual finding that no long-term serious injury resulted from the tort. That mixed factual-legal determination by the jury (that the tort victim is entitled to reasonable medical expenses for immediate medical consultation and treatment, but not for the further treatment or for general damages) is entitled to great deference.
JOHNSON, J., dissenting.
It would be illogical in this case to find defendant, Walgreen's, at fault for dispensing Prozac to this patient in a dosage four times the strength prescribed, award him medical expenses, but find no injury to justify a damage award for pain and suffering.
In my view, the record supports an award for general damages, and I would affirm the award of $40,000.00 in general damages and medical expenses in the amount of $7,372.00.
NOTES
[1] It seems generally agreed that John Scott's apparent stress following the fire manifested itself in fidgeting, general anxiety and fear. Walgreen asserts that John Scott exhibited violent or aggressive behavior even prior to the overdose, but the Wainwrights maintain that John Scott did not become physically violent until the Prozac episode.
[2] "Prozac" is the brand name for the generic antidepressant fluoxetine, a selective serotonin re-uptake inhibitor.
[3] Courrege was subsequently added as a defendant on April 27, 1998. The Wainwrights dismissed without prejudice their claims against both Courrege and Fontenot individually on February 1, 1999.
[4] Pertinent to our discussion here are the following interrogatories on the Jury Verdict Form and the jury's responses:

1. Was there any fault on the part of Walgreen Louisiana Company, Inc., which was the legal cause of the injuries to the plaintiffs' son, John Scott Wainwright?
 YES (X) NO ( )
If you answered "No" to any of the preceding questions, do not answer any more questions. Sign and date this form and return it to the courtroom. If your answer is "Yes," proceed to Question Number Two.
[Questions Two and Three asked the jury to decide whether any fault was attributable to Bert Wainwright, and, if so, to allocate fault. The jury assessed 99% of the fault to Walgreen and 1% to Bert.]
4. Without consideration for the percentages listed above, what total amounts in dollars and cents will compensate plaintiffs' son, John Scott Wainwright, for his damages?

Pain and suffering $(0)
Mental anguish $(0)
Loss of enjoyment of life $(0)
Medical expenses $1500.00
Future counseling expenses $(0)
Future tutorial expenses $(0)

[Questions Five and Six asked the jury whether Bert and/or Jenna were entitled to damages for loss of consortium. The jury made no award to either of them.]
[5] The third circuit held that the following medical expenses were recoverable:

Lake Charles Memorial Hospital $1,035.00
Dr. John Bamabanek $ 140.00
Dr. A.L. Cook $ 39.00
Prozac prescription $ 10.50
Dr. Charles Monlezun $6,147.00
 _________
 TOTAL $7,732.00

Wainwright, 750 So.2d at 1083. There was no itemization of the jury's medical expenses award, but it appears that the jury awarded roughly the same expenses, less the significant cost of Dr. Monelzun's treatment.
[6] The jury's $1,500.00 award is only slightly greater than the costs related to the hospitalization, indicating that the jury likely intended to limit its award to expenses related to John Scott's hospital stay.
[1] Walgreen, as the party responsible for the overdose, clearly is responsible for the medical expenses to medically check and treat the effects of the overdose.
[2] This responsibility of a tortfeasor for the consequences of his or her conduct is the very theory of liability for medical monitoring, as this court unanimously held (and as almost every other jurisdiction in the United States has held) in Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355.