CONERY, J.,
concurring in part and dissenting in part.
IH agree with the majority that the verdict should be affirmed, but I disagree with increasing the general damages award. The role of an appellate court in reviewing an award of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70.
[A] jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant’s fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict *1259 such as the one before us must ask whether the jury’s determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a de novo review of the record.
Id. at 76. The specific facts of each case are ultimately determinative of whether there has been an abuse of discretion. Id.
The particular facts of this case are that Plaintiff had an extensive medical history prior to this accident. The record further reflects that she was less than honest with her doctors about several issues, and her credibility was at issue. I believe that there were two reasonable views of the evidence. One view, presented 12by Defendants, is that Plaintiff sustained straining type injuries to her neck, low back, and left knee which resolved in 4 months. Another view, presented by Plaintiff, is that she suffered a chronic myofascial back injury lasting for 30 months.
The jury chose to award past and future medical expenses of $45,000 and past lost wages of $8,400.00 (representing four months of lost wages). The general damages award totaled $17,000.00. I do not believe the award of medical expenses is wholly inconsistent with the award for general damages. I disagree with the majority’s finding that, “[T]he jury felt that Ms. Ford was entitled to recover for medical expenses for her treatment totaling approximately thirty months[.]” The majority cannot and should not speculate on what the jury felt.
There are any number of reasons why a jury might award all of the medical expenses claimed but award a conservative amount for general damages. Wainwright, 774 So.2d 70. The fact that the jury awarded $45,000.00 in medical expenses does not equate to a finding that the jury believed Plaintiffs injuries necessitated “continuous” medical treatment for thirty months or continued to suffer from injuries sustained in this accident as opposed to suffering from pre-existing conditions or some other cause. Counsel for Defendant suggested to the jury that they award all of the medical expenses of $45,000.00 so as not to “penalize” Plaintiff for seeking out different medical opinions and exploring all options. The jury award of all of the medical expenses, therefore, was conceded by defense counsel as part of his trial strategy in order to obtain a more reasonable result on the general damage award, which he succeeded in doing.
The issue of Plaintiff’s credibility, or lack thereof, was a serious consideration for the jury. Counsel for Defendant correctly points out in his Supplemental Brief filed on May 13, 2013:
I,.¡Furthermore, despite Ms. Ford’s arguments to the contrary, she did not have “thirty (30) months of active medical treatment”. Her medical treatment from the date of the accident until the trial was irregular, at best, as follows:
a) Ms. Ford treated with Doctors Rush and Gremillion (neither of whom knew of the treatment by the other) from the date of the accident until May 7, 2010. This was a period of four (4) months. She also treated with a physical therapist during this time. The therapist discharged her as pain free on April 14, 2010, and Dr. Rush discharged her as pain free on May 7, 2010;
b) Ms. Ford next saw a psychologist, Dr. John Jolly, on June 29, 2010, for an evaluation for gastric by-pass surgery. According to Ms. Ford, life was good at that time. There was no mention of the accident;
*1260 c) Ms. Ford next saw Dr. Andrew Hargroder for the gastric by-pass surgery on August 25, 2010. There was no mention of the accident to Dr. Har-groder then, or at any time before then;
d) Ms. Ford next saw Dr. Gremillion on September 1, 2010. She told him she had been having low back pain for the past three (3) weeks, but did not attribute it to the accident. Instead, she told him it occurred because she had been driving long distances to work during the past three (3) weeks;
e) Ms. Ford did not see a doctor again until four (4) months later, when she saw Dr. Patrick Juneau, III. She saw this doctor on December 29, 2010 at the referral of her attorney. His examination of her was normal, with no objective findings;
f) Dr. Juneau prescribed a course of three (3) epidural steroid injections, because a prior MRI showed a very minimal disc bulge at the LS-S 1 level. Dr. Juneau testified that this bulge was not related to the accident;
g) Dr. Juneau next saw Ms. Ford on May 20, 2011, after the injection. He recommended a discogram to check out the disc bulge. The discogram was, normal. So, Dr. Juneau discharged her in July, 2010. His period of treatment through discharge was about six and one-half (6½) months;
|4h) Ms. Ford saw Dr. Stubbs for knee complaints on two (2) occasions during the time she was seeing Dr. Juneau, specifically on February 21, 2011 and April 21, 2011. He ordered a diagnostic test of the knee (an MRI) which showed mild chondromalacia, a pre-existing condition. Ms. Ford never followed up with him;
i) Ms. Ford returned to Dr. Juneau three (3) months later, on October 24, 2011. Dr. Juneau had no notes on that visit;
j) Ms. Ford returned to Dr. Juneau on July 12, 2012, almost nine (9) months after her last visit. Coincidentally, this visit was only twelve (12) days before trial and five (5) days before his trial deposition was taken. No treatment was rendered on that date.
So, as the Court can see, Ms. Ford did not have thirty (30) months of steady, active medical treatment.
The jury, thus, had more than sufficient evidence upon which to properly assess general damages at a conservative amount of $17,000.00. The jury’s verdict was not manifestly erroneous and should be affirmed.
For all of these reasons, I dissent from the majority’s increase in the general damages award.