# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-990

**SCOTT FERGUSON**

**VERSUS**

**LOEWER POWERSPORTS & EQUIPMENT, ET AL.**

\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2006-9694
HONORABLE MARK JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy and J. David Painter, Judges.

**AFFIRMED.**

**Amy, J., dissents and assigns written reasons.**

**Joseph R. Poussan, Jr.**
**P.O. Drawer 1705**
**Lake Charles, LA 70602-1705**
**Counsel for Defendant-Appellant:**
      **Loewer Powersports & Equipment,**
      **Federated Mutual Insurance Co.**

**Derrick G. Earles**
**Brian M. Caubarreaux**
**Emily G. Meche**
**144 West Tunica Drive**
**P. O. Box 129**
**Marksville, LA71351**
**New Orleans, LA70163**
**Counsel for Plaintiff-Appellee:**
      **Scott Ferguson**

**PAINTER, Judge.**

Defendants, Loewer Powersports & Equipment (Loewer) and Federated Mutual Insurance, appeal the trial court's judgment in favor of Plaintiff, Scott Ferguson, finding Loewer liable for damages resulting from Plaintiff's use of a lawn mower loaned to him by Loewer. Finding no error in the trial court's judgment, we affirm.

Plaintiff operates a lawn maintenance service. He bought a riding lawnmower from Loewer and sometime later, brought the mower to Loewer for service. Loewer loaned Plaintiff the same model mower while his was being repaired. The next day, while mowing a customer's lawn with the loaner mower, Plaintiff felt a stinging on his back and turned around to see what was happening. As he did so, his right hand became stuck in the damaged armrest of the mower. Finding hot water spraying on him from behind, he jumped off the mower, yanking his hand out of the damaged armrest, and injuring it. He later discovered that the radiator hose had become detached causing the spray of hot water.

He filed this suit against Loewer, and after a trial on the merits, the trial court ruled in his favor and awarded him $50,000.00 as stipulated by Plaintiff prior to trial. Loewer appeals, arguing that the trial court erred in concluding that an accident occurred, in finding that the lawnmower was defective, in finding that Plaintiff carried its burden of proof with regard to the defect, in finding that Plaintiff was not responsible for the defect, in failing to find that Plaintiff failed to mitigate his damages, and in its award of damages.

*Standard of Review*

> The manifest error standard of review is the proper standard to be applied in cases involving findings of unreasonable risks of harm or unreasonably dangerous defects. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La.3/4/98), 708 So.2d 362. Thus, an appellate court may not

1

set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).A two-tiered test must be applied in order to reverse the findings of the trial court:

a. the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finder's, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housley v. Cerise*, 579 So.2d 973 (La.1991).The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

*Bullock v. The Rapides Foundation*, 06-26, pp. 4-5 (La.App. 3 Cir. 10/11/06), 941 So.2d 170, 174, *writs denied*, 06-2646 (La. 1/8/07),948 So.2d 127, 06-2703 (La. 1/8/07), 948 So.2d 132

Therefore, we will examine the record to determine whether a reasonable factual basis exists therein for the trial court's findings and whether the finding was clearly wrong.

*Elements of Claim*

Plaintiff asserts that his injury was the result of a defect in the lawnmower and that Loewer was the owner and custodian of the mower.

La.Civ.Code art. 2317 provides that:

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we

2

are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

La.Civ.Code art. 2317.1 provides that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

This court recently outlined the elements of a claim under La.Civ.Code art 2317.1 as follows:

> Accordingly, to prevail in [his] claim, the plaintiff [must] prove the following: (1) that the thing which caused the damage was in the defendant's custody or control, (2) that it had a vice or defect that presented an unreasonable risk of harm, (3) that the defendant knew or should have known of the vice or defect, (4) that the damage could have been prevented by the exercise of reasonable care, and (5) that the defendant failed to exercise such reasonable care. If the plaintiff fails to provide proof any one of these elements, his ... claim fails.

*Robinson v. Meaux*, 09-374 (La.App. 3 Cir. 11/4/09); ___ So.3d. ___, ___ (citing *Riggs v. Opelousas Gen. Hosp. Trust Auth.*, 08-591, pp. 3-4 (La.App. 3 Cir. 11/5/08), 997 So.2d 814, 817) (alterations in original).

1) <u>Garde</u>

Defendants first assert that the evidence shows that they did not have custody or garde of the mower at the time of the incident, having turned it over to Plaintiff the previous day. We disagree.

> [A]n owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer. As we have previously observed, the principle of legal fault or strict liability underlying Civil Code articles 2317-- 22 is analogous to the principle of strict products liability. Halphen v. Johns-Manville Sales Corp., supra, at p. 116-17. Although the manufacturer usually does

3

not have custody of the product when the injury occurs, in order for strict liability to arise, the plaintiff must prove that the product's unreasonably dangerous condition existed at the time the product left the control of the manufacturer, and that the product reached the user in substantially that same defective condition. As between the innocent consumer of a product and the manufacturer, the manufacturer is in the better position to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in his product before it leaves his control. **Likewise, the owner of a thing is in a better position than the innocent victim to guard against the unreasonable risks of structural defects in the thing he owns which arise before he transfers possession of it to another.**

*Ross v. La Coste de Monterville*, 502 So.2d 1026, 1032 (La. 1987) (emphasis added).

Accordingly, we find that Loewer retained garde or custody in spite of Plaintiff having actual possession of the mower.

2) Knowledge

Defendants further assert that Plaintiff failed to carry its burden of showing that Loewer had actual or constructive knowledge of the defect. The trial court found as follows:

The exhibits, the Exhibit No. 1 which was admitted into the evidence were the photographs and they show of course what starts the chain of the events which lead to the injury. And the neck of the radiator is clearly in deplorable condition. There is absolutely no evidence of any kind or any indication to suggest that the plaintiff, Ferguson had anything to do with that deplorable condition of the neck. The question becomes whether Loewer Power Sports knew or should have known and it is interesting because also in the photographs these are taken by a lay person who can't know the law but there's -a belt and the condition of that belt shows that maintenance on this mower was not kept up to par. This belt is obviously in considerable, considerably deplorable condition. In fact, significantly and that goes part and parcel with this part of the radiator. It is the court's opinion that the hose was slipped over an obviously defective and faulty neck to the radiator.

. . . .

. . . the lawnmower in the custody and garde of Loewer Motor Sports had some, some obvious defects that the Court believes would have been found in with normal and routine maintenance.

4

Defendants point to the testimony of Wilfred Loewer and Gregory Graff as proof that the mower could not have been in the condition described by the trial court when it left the possession of Loewer. Wilfred Loewer, owner of Loewer, testified that the mowers owned by his business are periodically run through the shop for service. He stated that it is not Loewer's policy to loan out a mower in this condition and that he didn't think a mower in this condition would run as long as Plaintiff ran the mower. He stated, however, that when a mower is returned, it is not feasible to check every aspect of its condition. He further did not know to whom the mower was loaned before it was loaned to Plaintiff. It was his opinion that the belt would have been replaced in ordinary maintenance done to the mowers owned by Loewer's. There was no testimony on his part that he either ordered or witnessed service done to the mower before it was delivered to Plaintiff.

Gregory Graff testified that prior to loaning a mower, it was the practice at Loewer's to look it over, check the belts, service the mower, and check antifreeze, oil, blades, and tire air pressure levels. However, he did not testify that he either performed or witnessed this being done to the mower loaned to Plaintiff.

He testified that if anything was broken or missing on the radiator, technicians would have found it and fixed it. He stated that the mower had the proper water level when it left the shop but admits that he did not himself check. He stated that a technician would have done so.

Plaintiff testified that after jumping off the mower, the engine stopped because of safety features. He further testified that he allowed the mower to cool down, opened it up, and saw that the radiator hose had come off. He noticed that the neck of the radiator was damaged and that someone had apparently moved the clamp on

the hose to try to get it to stay on the radiator. He took photographs upon which the trial court relied in giving reasons for judgment.

Defendants assert that the damage to the radiator was created by Plaintiff, arguing that since Loewer and Graff testified that it did not leave the Loewer facility in that condition, the damage must have been done by Plaintiff. Both Loewer and Graff testified that Plaintiff treated his equipment roughly. However, as the trial court noted, there is no evidence to support the conclusion that Plaintiff had anything to do with the defect. Essentially, the questions of whether Loewer knew or should have known of the condition and whether the defect was caused by Plaintiff, are ones of credibility. The trial court found Plaintiff credible and did not accept the testimony of Loewer and Graff. "In situations involving a conflict in the testimony, reasonable determinations of credibility and reasonable inferences of fact should not be disturbed, even if the appellate court might consider its own evaluations and inferences to be as reasonable." *Cross v. Timber Trails Apartments*, 04-1623, (La.App. 3 Cir. 4/6/05), 899 So.2d 853, 857 (citing *Cooper v. Louisiana State Dep't of Transp. and Dev.*, 03-1847, p. 8 (La.App. 1 Cir. 6/25/04),885 So.2d 1211, 1216, *writ denied*, 04-1913 (La.11/8/04), 885 So.2d 1142.

Given the reasonable credibility evaluations of the trial court, we find that the court had a reasonable basis for finding that Loewer knew or should have known of the defect.

3) Reasonable Care

Implicit in the trial court's finding is the conclusion that the accident could have been prevented by the exercise of reasonable care and that Defendants failed to exercise reasonable care to prevent the accident. It states in its reasons for judgment:

6

"Industries and businesses just have to have their equipment in better shape than this one obviously was." Defendants have not assigned error in this regard, and given the reasonable credibility evaluations previously discussed, we find no error in the trial court's findings with regard to the lack of reasonable care on the part of Loewer.

Accordingly, we find no error in the trial court's assessing Defendants with 100% of the fault in the accident to Plaintiff.

*Mitigation of Damages*

Defendants also assert that Plaintiff failed to mitigate his damages because he did not obtain the medical testing recommended by his treating physician. With regard to his failure to pursue the testing recommended by Dr. Heard, Plaintiff testified that he has no medical insurance and pays as he goes. He stated that he didn't get the testing done because of the expense and that Dr. Heard told him there was no use going back for treatment if the tests were not done. Although he had money in retirement savings, he testified that he would have been penalized had he withdrawn the money, and the treatment would have ended up costing him even more. Given this evidence, we find that Plaintiff's actions in not obtaining the recommended testing do not constitute a failure to mitigate his damages. *See Dubroc v. Swain*, 02-0763,(La.App. 3 Cir. 12/11/02), 833 So.2d 538.

*Amount of Damages*

Finally, Defendants assert that the trial court awarded an excessive amount in general damages.

> It is well-settled that a judge or jury is given great discretion in its assessment of quantum, both general and special damages. Louisiana Civil Code article 2324.1 provides: "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." Furthermore, the assessment of quantum, or the appropriate amount of damages, by a trial judge or jury

7

is a determination of fact, one entitled to great deference on review. *Wainwright v. Fontenot,* 00-0492, p. 6 (La.10/17/00), 774 So.2d 70, 74. This court has noted:

> [T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

*Perkins v. Entergy Corp.,* 00-1372 (La.3/23/01), 782 So.2d 606, *reh'g denied,* 4/27/01 (quoting *Canter v. Koehring,* 283 So.2d 716, 724 (La.1973)) (*superseded by statute on other grounds* ). Because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. *Youn v. Maritime Overseas Corp., et al.,* 623 So.2d 1257, 1261 (La.1993), *reh'g denied,* 10/7/93.

The role of an appellate court in reviewing a general damages award, one which may not be fixed with pecuniary exactitude, is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. This court has long held true to the following principle:

> [b]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

*Wainwright,* 00-0492, p. 6, 774 So.2d at 74 (quoting *Coco v. Winston Indus., Inc.,* 341 So.2d 332, 334 (La.1977) (internal citations omitted)). *See also Miller v. LAMMICO,* 07-1352, p. 28 (La.1/16/08), 973 So.2d 693, 711 (stating that an appellate court may disturb a damages award only after an articulated analysis of the facts discloses an abuse of discretion and citing *Theriot v. Allstate Ins. Co.,* 625 So.2d 1337, 1340 (La.1993)); *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La.1993); *Reck v. Stevens,* 373 So.2d 498, 501 (La.1979). . . . Reasonable persons frequently disagree about the measure of damages

in a particular case. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Youn,* 623 So.2d at 1261.

*Guillory v. Lee*, 09-75, p. 14-16 (La. 6/26/09), 16 So.3d 1104, 1116-17.

The trial court thoroughly reviewed the testimony and evidence with regard to the injury to Plaintiff's hand as well as the jurisprudence concerning similar injuries. It found Plaintiff to be credible and not a malingerer. He noted that four years after the accident, Plaintiff is still having chronic pain but, by modifying his lifestyle and work habits, is able to continue to do his work. With regard to a video relied on by Defendants to show that Plaintiff is not disabled by the injury, the trial court found that much of the video is useless. It noted that while it shows Plaintiff working, it does not contradict Plaintiff's testimony that he continues to work with some modifications of his routine. It found the tape inconclusive as to Plaintiff's use of his injured finger. It further found that "as a whole the video evidence does not negate or hinder the plaintiff's case."

After reviewing the record, and in light of the reasonable credibility evaluations made by the trial court, we cannot say that the award of general damages was an abuse of his discretion in this regard.

**CONCLUSION**

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendants.

AFFIRMED.

9

NUMBER 09-990

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SCOTT FERGUSON

VERSUS

LOEWER POWERSPORTS & EQUIPMENT , ET AL

AMY, J., dissents and assigns reasons.

I respectfully dissent from the majority decision as I find that a reversal is required. In my opinion, the plaintiff failed to carry his burden of proving the defendants knew or should have known about the alleged defect in the lawnmower.

The trial court found that the alleged defect would have been found with normal routine maintenance, and thus the defendants knew or should have known of its existence. However, I find the record reveals no sufficient evidence to support this finding.

The trial court's reasons reveal that it relied on pictures presented by the plaintiff to find what the defendant knew or should have known. However, I find the record unclear as to what the pictures represented. It is not evident whether the damage shown in the picture existed before the alleged incident or whether the incident itself caused the damage. Wilfred Loewer, the owner of the defendant shop, testified that he was unable to tell from the pictures whether the lawnmower's belt was broken or loose. Scott Graff, a previous manager of the defendant shop, testified that all of the shop's loaner lawnmowers were serviced before the customers took them home. Further, he testified that if anything was broken or missing on the radiator, they would have known about it from the service and would have corrected it.

The majority finds that the question as to whether the defendants knew or should have known of the defect were credibility determinations, and that it was reasonable for the trial court to find the plaintiff credible and reject the defendants' testimony. In my opinion, even if the defendants' testimony was properly rejected by the trial court, it was the plaintiff's burden to prove that the defendants knew or should have known of the defect. I find no sufficient evidence presented indicating that the plaintiff carried his burden in this regard. The plaintiff testified that before the accident, he checked the lawnmower and did not see any problems. He also admitted that he performed no maintenance to the lawnmower because he had just received the lawnmower from the defendant and "everything was done."

Considering the evidence presented by the plaintiff, I find that the record does not support the trial court's inference that the defendants knew or should have known about the alleged defect in the lawnmower. As such, I conclude that a reversal of the trial court's judgment is warranted.