NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-387

CAROLANN DOWNING

VERSUS

JOHN MILLER, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2008-5846
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Timothy A. Maragos
Caffery Plaza, Suite 100
4023 Ambassador Caffery Pkwy
Lafayette, LA 70503
(337) 988-7240
Counsel for Defendants/Appellees:
State Farm Mutual Automobile Insurance Co.
John Miller
Shondrika Monique Miller

**John M. Jefcoat**
**Galloway & Jefcoat, L.L.P.**
**P. O. Box 61550**
**Lafayette, LA 70596-1550**
**(337) 984-8020**
**Counsel for Plaintiff Appellant:**
**Carolann Downing**

**PICKETT, Judge.**

Plaintiff appeals the trial court's general damage award, urging that the exacerbation of her bipolar anxiety disorder and obsessive compulsive disorder she suffered as a result of the accident at issue warrants a higher award. For the reasons discussed below, we affirm the award.

## FACTS

On October 15, 2007, Carolann Downing was involved in an automobile accident with John Miller. Ms. Downing sued Mr. Miller and his insurer, State Farm Mutual Automobile Insurance Company (State Farm), seeking general and special damages for injuries she suffered in the accident. The matter was tried on December 4, 2009. At trial, Mr. Miller and State Farm stipulated that Mr. Miller was liable for Ms. Downing's claims, and the only issue presented to the trial court for consideration was damages. Ms. Downing testified at trial, and the deposition of her treating physician, Dr. Bob Winston, was introduced into evidence.

Ms. Downing testified that the accident occurred on Congress Street in Lafayette near its intersection with Bertrand Drive. She explained that she was driving west on Congress Street when Mr. Miller was exiting a restaurant and struck her vehicle. Ms. Downing related that she did not suffer any physical injuries but did experience an exacerbation of symptoms associated with her bipolar anxiety and obsessive compulsive disorders.

According to Ms. Downing, she first experienced mania then depression after the accident. She explained that she initially suffered loss of sleep, loss of appetite, racing thoughts, nervousness, agitation, and anger. Then, after experiencing what she described as a "crash and burn," she became depressed and was unable to care for her personal needs–she did not shop for herself, she stayed in bed and slept a lot, she had no appetite. During examination by defense counsel, Ms. Downing acknowledged

-1-

that during her life she had "periods of ups and downs" and that the five-month period beginning with the accident was one of those periods.

Dr. Winston confirmed Ms. Downing's testimony that the accident exacerbated her mental disorders. He testified that Ms. Downing had been in his care for four or five years when the accident occurred, explaining that he initially began treating her in early 2005 for bipolar disorder/manic depressive illness and treated her continuously thereafter. He later diagnosed her as suffering from obsessive compulsive disorder. According to Dr. Winston, Ms. Downing reported the accident and that she was feeling "racey" to his nurse practitioner during an office visit on October 23, 2007. Ms. Downing also reported that her sleep was improving and that her appetite was okay, but she was nervous about a visit with her son. The nurse practitioner noted that Ms. Downing was well groomed and cooperated. She was very anxious, spoke very rapidly, moved quickly, and changed her mind frequently during that visit. The nurse practitioner also noted that Ms. Downing's thought process was tangential, but she had no hallucinations or delusions; she was not suicidal. The nurse practitioner resumed Ms. Downing's obsessive compulsive disorder medication and continued her antidepressant medication.

Dr. Winston testified that Ms. Downing continued to deteriorate. During a later office visit, Ms. Downing was more symptomatic than during her prior visit: she was cooperative but guarded, more suspicious and paranoid, scattered, disheveled, and anxious; her thought process was disorganized; and her judgment was impaired. Additionally, Ms. Downing changed her medication without consulting Dr. Winston. A change in the medication prescribed for her depression improved her compliance with taking the medication, which led to improvement in her overall condition.

During her March 2008 visit, Ms. Downing was well groomed, cooperative, calm with some anxiety, had normal speech and flat affect, and her speech was circumstantial, i.e., her speech was organized but she talked a lot. Additionally, she

was not hallucinating or suicidal, and while she was still depressed, her mood was improving. Dr. Winston testified that Ms. Downing was stabilizing as of her March visit.

Ms. Downing's next visit with Dr. Winston was on April 1, 2008. At that visit, she reported much stress in her life due to an aunt passing away; she was again suspicious and more obsessive.

Dr. Winston testified that Ms. Downing is "fragile" and that stressors in her life can trigger an exacerbation of her bipolar anxiety disorder and her obsessive compulsive disorder because "she has a hard time dealing with trauma, stress, anything that goes wrong in her life." He opined that the accident caused an exacerbation of her pre-existing bipolar anxiety disorder and obsessive compulsive disorder that lasted from the date of the accident until early March 2008 when her overall situation was improving.

Ms. Downing agreed with Dr. Winston's assessment that the accident resulted in an exacerbation of her disorders for a period of approximately five months. She appeals the trial court's damage award, asserting that it is insufficient to compensate her for her injuries.

**DISCUSSION**

In *Guillory v. Lee*, 09-75, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116, the supreme court reiterated that pursuant to La.Civ.Code art. 2324.1, the trial court has "great discretion" in assessing damages and that the assessment of damages is "a determination of fact . . . entitled to great deference on review. *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74." Consequently, an appellate court can only disturb an award of damages if the record "clearly reveal[s] that the trier of fact abused its discretion in making its award." *Wainwright*, 774 So.2d at 74 (quoting *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 335 (La.1976)).

-3-

In awarding damages, the trial court noted that it was undisputed that Ms. Downing suffered an "aggravation of her mental disorders" as a result of the accident and that the aggravation lasted five months and was not "extremely severe." It then determined that $1500 per month for the five-month aggravation was an appropriate damage award for Ms. Downing's injuries.

Ms. Downing urges that the trial court's award of $7500 was clearly wrong and asks that the award be increased. She prefaces her argument with the well-settled tenet that "a tortfeasor takes his victim as he finds him and when a defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005-1006 (La.1993)." *Guillory*, 16 So.3d at 1124.

As noted above, the trial court clearly recognized that Ms. Downing's mental disorder was aggravated by the accident. However, the trial court also recognized that the aggravation lasted for only five months and was similar to other aggravations triggered by ordinary events in Ms. Downing's life. For example, in her April 1, 2008 visit with Dr. Winston's nurse practitioner, Ms. Downing related that her aunt had passed away and that there was much stress in her life due to her aunt's death. The notes from that visit indicate that Ms. Downing was suspicious and more obsessive than on her previous visit and that her mental condition on that visit was similar to her mental condition shortly after the accident. Additionally, on October 23, 2007, her first visit after the accident, Dr. Winston's nurse practitioner noted that, in addition to being anxious, speaking very rapidly, and changing her mind frequently that day, Ms. Downing was nervous about "her son's visit." Accordingly, the trial court's determination that the aggravation caused by the accident was similar to aggravations caused by ordinary events in Ms. Downing's life is supported by the record. Under these facts, we cannot say that the trial court's award of $7,500 in damages was an abuse of discretion.

Ms. Downing cites three cases as examples of prior damage awards that would be appropriate herein. Our determination that the trial court did not abuse its discretion in awarding $7500 in general damages, however, precludes consideration of prior damage awards. *Youn v. Mar. Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

### Disposition

The judgment of the trial court is affirmed. All costs are assessed to Carolann Downing.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules-Courts of Appeal. Rule 2-16.3.