NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-949

JACKIE DAUZART, IND. AND OBO THE MINOR BRODY DAUZART

VERSUS

SAFEWAY INSURANCE COMPANY, ET AL.

**********
APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, NO. 90285
HONORABLE JESSE PHILLIP TERRELL JR., CITY COURT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

AFFIRMED.

James A. Bolen Jr.
Bolen, Parker, Brenner & Lee, Ltd., APLC
P. O. Box 11590
Alexandria, LA 71315-1590
Telephone: (318) 445-8236
COUNSEL FOR:
     Defendants/Appellants - Empire Fire & Marine Insurance Company
     and Ty Lane Carver

Keith Michael Borne
Borne & Wilkes, L.L.P.
P. O. Box 4305
Lafayette, LA 70502-4305
Telephone: (337) 232-1604
COUNSEL FOR:
     Defendants/Appellees - Safeway Insurance Company and Chasity
     Kilpatrick

**W. Jay Luneau**
**Luneau Law Office**
**1239 Jackson Street**
**Alexandria, LA 71301**
**Telephone:  (318) 767-1161**
**COUNSEL FOR:**
>	**Plaintiffs/Appellees - Jackie Dauzart, individually and on behalf of the minor Brody Dauzart**

**THIBODEAUX, Chief Judge.**

Defendants, Empire Fire & Marine Insurance Company (Empire) and Ty Lane Carver, assert that the trial court erred in this vehicular accident case by concluding that Carver's negligence was the sole cause of Plaintiffs', Jackie and Brody Dauzart's, injuries and by awarding excessive damages to them. For the following reasons, we affirm.

I.

**ISSUES**

We shall consider whether, in this motor vehicle accident case, the trial court erred by:

(1)    finding Defendant Carver solely at fault where Carver, the driver of an eighteen-wheeler, hit a vehicle that was switching lanes in which Jackie and Brody were passengers; and,

(2)    awarding excessive damages where Plaintiffs sustained soft tissue injuries.

II.

**FACTS**

On the day of the accident, Chasity Kilpatrick was driving a Pontiac Grand Prix. Her son, as well as Jackie Dauzart and his ten-year-old son, Brody, were passengers. The Pontiac was in the far-right lane on a four-lane highway with two eastbound and two westbound lanes. The highway also had a center turn lane. The lane in which Plaintiffs were traveling was getting congested. Jackie looked at the lane to the left, and, upon seeing no vehicles in it, told Kilpatrick it was safe to move over. According to Jackie, Kilpatrick looked in the rear-view mirror and also saw no vehicles in the left lane. Jackie testified their vehicle traveled in the left lane fifty to one hundred feet before it started to move into the turn lane. When the vehicle was

three quarters in the turn lane, the eighteen-wheeler Carver was operating collided with the Pontiac making it spin to face the opposite direction.

The officer who investigated the accident testified that the last traffic stop was more than two blocks from the accident site. After he was qualified as an expert in accident reconstruction, the officer testified that "it appeared that the vehicle [Pontiac] was at an angle in the [turn] lane as it was impacted from the front of the other vehicle . . . ."

Referring to the accident report, the officer testified that Carver told him he was in the *right* lane of travel and observed that the traffic stopped in the right lane. Carver also told the officer he observed the Pontiac crossing right in front of him. The officer opined that the discrepancy means that in reality Carver was traveling in the left lane. Nevertheless, he also agreed that if the left lane were clear, it was possible for Carver to travel initially in the right lane and switch to the left lane at the time that the Pontiac crossed into the left lane. The officer agreed this would make both statements in the report, i.e., that he was traveling in the *right* lane and then observed the Pontiac cross in front of him, true. Finally, while the officer did not observe any cuts on the people in the Pontiac, Jackie told him that his neck and back were hurting. The police report also indicated that Brody and Jackie had possible injury complaints.

Carver testified that he was traveling in the *left* lane in the same direction as the Pontiac. Carver stopped at a traffic signal before the impact. He estimated that the signal was seventy-five to one hundred yards away from the accident site, but in light of the police report that indicated the distance to be a quarter of a mile, conceded that he was guessing as to the distance. Based on *his* estimated distance from the last stop, Carver estimated his speed to be at twenty-five to thirty miles per hour at the time of the impact.

Just before the accident, Carver kept noticing that the Pontiac's driver, while in the right lane, was looking into her rear-view mirror. Carver took this behavior to mean that the Pontiac's driver was about to change lanes. Carver then testified that the Pontiac made a ninety-degree turn into the lane he was traveling in and attempted to cross into the turn lane when Carver's vehicle collided with the Pontiac.

Three weeks after the accident, Jackie and Brody saw a doctor. The doctor's report indicated that Jackie and Brody suffered various soft-tissue injuries, including cervical, thoracic, and lumbar strains, a post-traumatic headache, and clavicle trauma. To both, the doctor prescribed physical therapy, medication, and cold/hot packs. Jackie continued to suffer from frequent headaches at the time of the trial, and Brody complained of knee popping and pain. Brody's knee symptoms were mild right after the accident but worsened significantly when he started physical training at school.

Jackie testified that he did not have health insurance, had limited resources to pay out-of-pocket for a doctor visit, and generally disliked going to a doctor's office. That is why he waited some time before going to the doctor. Jackie also was candid about his previous conviction for possession of stolen goods.

Before the accident, Jackie earned one hundred dollars per day working five days per week as a carpenter for his ex-brother-in-law. He was paid cash. Jackie missed at least three weeks of work, and, when he went back to work, he could not perform the same type of work because of his difficulties moving and bending.

After a trial, the court found that Carver was solely responsible for the accident. The trial court awarded $9,500.00 in general damages to Brody and $11,000.00 in general damages as well as $1,500.00 in lost wages to Jackie. Both Jackie and Brody were reimbursed for their medical expenses.

3

## III.

## STANDARD OF REVIEW

"[A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of 'manifest error' or unless it is 'clearly wrong.'" *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). Thus, "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.* (citations omitted). The trial court's finding and allocation of fault are factual determinations. *Pfefferle v. Haynes Best Western of Alexandria*, 09-999 (La.App. 3 Cir. 6/2/10), 38 So.3d 1189, *writ denied*, 10-1582 (La. 10/29/10), __ So.3d __ (citing *Sims v. State Farm Auto Ins. Co.*, 98-1613 (La. 3/2/99), 731 So.2d 197). Furthermore, the trial court's assessment of damages is a finding of fact to which appellate courts give great deference on review. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70. Thus, "[b]efore a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award." *Guillory v. Lee*, 09-75, p. 15 (La. 6/26/09), 16 So.3d 1104, 1117 (citations omitted).

## IV.

## DISCUSSION

### A) Finding of Fault

In their brief, Defendants attempt to portray what essentially is an issue of fact as the trial court's failure to apply the appropriate law to the facts of the case. This court finds that attempt without merit. Defendants assert that "[i]t must be presumed that Kilpatrick did not look" before she turned "because if she had looked she would have surely noticed the appellant's 18-wheeler." Defendants further

maintain that because Kilpatrick did not testify at trial, we should presume that her testimony would have been adverse to her. Finally, Defendants point to Jackie's felony conviction and his testimony's unreliability because of it.

This court finds no manifest error in the trial court's factual determinations. That Kilpatrick did not look is an untenable position because Carver himself testified that he saw that Kilpatrick was looking in her rear-view mirror. Moreover, the trial court who listened to Jackie's testimony was in a much better position than this court to assess his credibility. The trial court was fully aware of Jackie's felony conviction, but apparently found him more credible than Carver. Finally, the trial court could have easily concluded, based on the officer's testimony and the information in his report, that Carver was in the right lane and then switched lanes immediately before the accident.

That Kilpatrick did not testify is of no consequence. She had no obligation to do so as no-one subpoenaed her as a witness. Defendants correctly state that when a party fails, without satisfactory explanation, to call a witness who possesses knowledge of facts pertinent to the resolution of litigation, it is presumed that the witness would have testified adversely to that party. Nevertheless, the rule applies with the equal force against Defendants as they also failed to call Kilpatrick as a witness. Moreover, Kilpatrick did not have to prove anything. She filed no cross-claim against Carver. Plaintiffs simply failed to prove she had any fault in this accident.

**B) Damages**

Defendants strenuously argue that Jackie provided no documentary evidence to prove his lost wages and that the trial court's award of general damages was excessive given that Jackie and Brody suffered only soft-tissue injuries.

Nevertheless, this court finds that the trial court committed no manifest error in awarding the damages. First, the trial court heard Jackie's testimony regarding his wages and was fully aware that Jackie could not prove his wages with any documents. Yet, the trial court obviously believed Jackie, and we shall not second-guess that decision in the absence of any evidence to the contrary. Moreover, Defendants simply asserted that the award of general damages was excessive. They provided no authority for their position. We find that in light of Jackie's ongoing headache, the worsening of Brody's knee condition, and the various cervical, thoracic, and lumbar strains both suffered, the award of general damages was not excessive.

V.

## CONCLUSION

The judgment in favor of Jackie and Brody Dauzart is affirmed. We assess the costs of this appeal against Empire Fire & Marine Insurance Company and Ty Lane Carver.

**AFFIRMED**.

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.

6