## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2020 CA 0494

KIERA CRAWFORD, INDIVIDUALLY AND ON BEHALF OF
SANIYA CRAWFORD AND MALCOLM CRAWFORD

VERSUS

SHELTER GENERAL INSURANCE COMPANY AND MATTHEW
LABEE

Judgment Rendered: ___JUL 2 8 2021___

\* \* \* \* \* \* \*

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 643,773

Honorable R. Michael Caldwell, Judge Presiding

\* \* \* \* \* \* \*

| | |
|---|---|
| W. Paul Wilkins<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant,<br>Kiera Crawford |
| Sallie C. Dupont<br>Kolby P. Marchand<br>Baton Rouge, Louisiana | Attorneys for Defendants/Appellees,<br>Shelter General Insurance Company<br>and Matthew Labee |

\* \* \* \* \* \* \*

BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.

Holdridge J, dissents w/ Reasons

**PENZATO, J.**

Plaintiff, Kiera Crawford, appeals a judgment rendered in accordance with a jury verdict, as well as a judgment notwithstanding the verdict and alternative motion for new trial, contending the jury erred in its award of general damages. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 15, 2014, Ms. Crawford was involved in a motor vehicle collision with a tractor-trailer driven by defendant Matthew Labee. Ms. Crawford was operating her vehicle, traveling in the eastbound right outside lane of Greenwell Springs Road in Baton Rouge, Louisiana, when Mr. Labee changed lanes and collided with Ms. Crawford's vehicle. Ms. Crawford filed the instant suit against Mr. Labee and Shelter General Insurance Company, his insurer, seeking damages for personal injuries, including pain and suffering, mental anguish, lost wages, loss of enjoyment of life, property damage, and medical and other expenses.[1] In January 2019, the case was tried before a jury. The jury concluded Mr. Labee was solely at fault in causing the December 15, 2014 accident and that Ms. Crawford sustained damages that were caused by the accident. The jury awarded Ms. Crawford $50,000.00 in past medical expenses[2] and $1,000.00 for physical pain and suffering, past and future.[3] The jury declined

---

[1] Ms. Crawford filed suit in both her individual capacity and on behalf of her minor children, who were in the car at the time of the accident. The claims of her children were dismissed by judgment signed May 16, 2017.

[2] The $50,000.00 awarded to Ms. Crawford for past medical expenses did not reflect the full amount she sought.

[3] The jury initially returned a verdict with no award for physical pain and suffering. Thereafter, the trial court instructed the jury as follows:

> Ladies and gentlemen ... you have found that some damages were caused by the accident, and you have awarded some amount in medical expenses. Our law requires that when that happens there has to be a – some award. It doesn't say how much, but there has to be some award for at least some part of what we call general damages, which are ...: the physical pain and suffering, mental pain and anguish, and the loss of enjoyment of life. ... So, I'm going to ask that y'all go back in and reconsider. ... Thank you.

2

to make any award for future medical expenses, past and future mental anguish and distress, and loss of enjoyment of life. Judgment was signed on February 20, 2019, in accordance with the jury verdict. Arguing that the jury's verdict regarding damages was not supported by the evidence presented at trial, Ms. Crawford filed a motion for judgment notwithstanding the verdict ("JNOV") and/or motion for new trial, which the trial court denied by judgment signed August 8, 2019. Ms. Crawford appeals the trial court's February 20, 2019 and August 8, 2019 judgments.

## ASSIGNMENTS OF ERROR

Ms. Crawford urges the following assignments of error:

(1) The trial jury erred in its award for general damages.

(2) The trial judge erred in applying the criteria used to grant or deny a JNOV.

(3) The trial jury manifestly erred in its award for damages, therefore, the trial judge should have granted Ms. Crawford's JNOV.

(4) The trial judge abused its discretion in denying Ms. Crawford's motion for new trial.

## LAW AND DISCUSSION

A person injured through the fault of another is entitled to full indemnification for his resulting damages. See La. C.C. art. 2315; *Mitchell v. Access Medical Supplies, Inc.*, 2015-0305 (La. App. 1 Cir. 11/9/15), 184 So. 3d 118, 120. It is the plaintiff's burden to prove, by a preponderance of the evidence, the damages he suffered as a result of the defendant's fault. *Mitchell*, 184 So. 3d at 120. A jury is given great discretion in its assessment of quantum, as to both general and special damages. See La. C.C. art. 2324.1; *Guillory v. Lee*, 2009-0075 (La. 6/26/09), 16 So. 3d 1104, 1116.

General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering,

3

inconvenience, the loss of gratification or physical enjoyment, or other losses of life or life-style which cannot be measured definitely in monetary terms. *Waters v. Hebert*, 2019-0435 (La. App. 1 Cir. 11/20/19), 291 So. 3d 278, 283.

Under La. C.C. art. 2324.1, a jury has much discretion in the assessment of general damages. However, when a jury awards special damages but declines to award general damages, a reviewing court must first determine whether the jury's finding is so inconsistent as to constitute an abuse of its much discretion. *McDowell v. Diggs*, 2017-0755 (La. App. 1 Cir. 10/3/18), 264 So. 3d 489, 502.

***Award of general damages***

In her first assignment of error, Ms. Crawford contends that the jury erred in its award of general damages.

At trial, Ms. Crawford testified that the impact from the December 15, 2014 collision with Mr. Labee's vehicle pushed her vehicle onto the curb. According to Ms. Crawford, immediately after the accident, she was frightened and concerned for her children, who were in the car with her, and drove to her aunt's house. While at her aunt's house, she began to feel pain in her neck, shoulder, and back, and went to Baton Rouge General Medical Center for assessment.

The records from Baton Rouge General Medical Center reflect that Ms. Crawford presented to the Emergency Room on December 15, 2014, complaining of left-sided neck pain, left lower back pain and left hand pain, secondary to being involved in a motor vehicle accident two hours prior to arrival. She was diagnosed with hand pain, cervical strain, and lumbar strain, prescribed 800 mg Ibuprofen, and advised to follow up with her primary care physician in 1-2 days.

On December 31, 2014, Ms. Crawford saw Dr. Mary Thomas at the Bluebonnet Family Clinic as a new patient. Ms. Crawford complained of back pain, which she indicated started after the December 15, 2014 accident. She also complained of headaches associated with high blood pressure. Vital signs included

a body mass index of 42.9 and elevated blood pressure with the patient relating a prior history of elevated blood pressure. Ms. Crawford was noted as being morbidly obese. The physical examination on that date reflected that range of motion of the neck was normal. There was discomfort on palpation of the upper and lower back muscles, but range of motion was noted to be "fine." Dr. Thomas prescribed a muscle relaxer and anti-inflammatory.

Ms. Crawford returned to Dr. Thomas's office on January 27, 2015 for a routine physical. Dr. Thomas's records from that date indicate that Ms. Crawford complained of chronic back pain and that she was again prescribed a muscle relaxer and anti-inflammatory. She was also counseled on controlling her blood pressure and advised to start a low calorie diet. Examination of the spine revealed normal gait and posture; no spinal deformity; and symmetry of spinal muscles, without tenderness, decreased range of motion, or muscular spasm. On February 24, 2015, Ms. Crawford returned to Dr. Thomas's office to update her vaccinations, and the medical record shows no mention of neck or back pain or the accident.

Ms. Crawford next sought treatment for her back pain on April 2, 2015, more than two months after her January 27, 2015 visit with Dr. Thomas. She saw Dr. Joseph Turnipseed, a specialist in interventional pain management. Ms. Crawford's chief complaint was back pain; she indicated that her neck pain following the December 15, 2014 accident had resolved over time. Dr. Turnipseed adjusted her medications and referred her to Dr. Thomas Rathmann, chiropractor, for therapy.

Ms. Crawford's initial consultation with Dr. Rathmann was on April 7, 2015. At this initial visit, Ms. Crawford advised Dr. Rathmann that she had been involved in a motor vehicle collision on December 15, 2014. She complained of neck, mid-back, lower back, and right knee pain. His diagnosis was cervical, thoracic, lumbar, and knee strain/sprain. Dr. Rathmann ordered magnetic

resonance imaging (MRI) studies of her neck and back. Dr. Rathmann conservatively treated Ms. Crawford for approximately two months – from April 7, 2015 through May 26, 2015. He saw improvement during that time, especially to her thoracic spine. Her right knee pain resolved and her range of movement improved. According to Dr. Rathmann, while decreased, Ms. Crawford had some palpable neck and back tenderness the last time he treated her.

Ms. Crawford returned to Dr. Turnipseed on May 28, 2015. He had access to the results of the MRI scans of Ms. Crawford's neck and back. The reports reflected a midline disc herniation superimposed on disc bulging at C5-C6 with a midline anterior fissure, and disc bulging at C3-C4 and C4-C5 with no stenosis. The lumbar results reflected mild disc bulging at L4-L5 with normal facet joints and no stenosis, and disc bulging at L5-S1 with early facet arthropathy, but no stenosis present. Dr. Turnipseed recommended a lumbar epidural steroid injection ("L-ESI"). Ms. Crawford underwent her first L-ESI on June 18, 2015, and received a second on October 23, 2015. Ms. Crawford also underwent a cervical epidural steroid injection ("C-ESI") on October 23, 2015. Ms. Crawford experienced temporary relief in her neck, but no relief in her back from the injections. Dr. Turnipseed then performed a lumbar dural medial branch block and a lumbar radiofrequency ablation ("L-RFA") in December 2015 for Ms. Crawford's continued lower back pain. Ms. Crawford reported 60% relief from the L-RFA procedure. Dr. Turnipseed repeated the C-ESI on April 20, 2016, December 6, 2016, June 22, 2017, May 3, 2018, and November 26, 2018. He repeated the L-RFA on September 21, 2016, March 28, 2017, January 18, 2018, and August 2, 2018. Dr. Turnipseed testified at trial that Ms. Crawford was injured in the December 15, 2014 accident and opined that the pain she expressed since he began treating her in April 2015 was caused by the accident.

Medical records reflect that Ms. Crawford presented to a Lake After Hours

clinic on October 2, 2015, during the time she was being treated by Dr. Turnipseed, with complaints of headache and nausea. She reported taking no medication at the time. Examination of the neck was normal, with full range of motion. Neurological and musculoskeletal exams were both reported as normal.

The jury heard testimony from Dr. Richard Stanger, a neurosurgeon, who was retained by the defendants to perform an independent medical examination of Ms. Crawford. Dr. Stanger reviewed Ms. Crawford's medical records and examined her on March 9, 2017. Based upon her history, Dr. Stanger opined that Ms. Crawford was injured in the December 15, 2014 accident. However, he testified that her physical examination reflected that she had good range of motion in her neck and back, no spasm, and her gait was normal. Dr. Stanger testified that overall, her musculoskeletal and neurological exams were normal. He testified that the MRI findings of the back reflected arthritic changes that predated the accident, with her obesity a component thereof. He testified that extreme obesity increases the stress on the muscles of the back and increases the risk of having back pain. Dr. Stanger indicated that it was possible that Ms. Crawford's extreme obesity could increase the likelihood of her needing treatment for her low back even without the accident. He also testified that he could not say the imaging findings in the neck were related to the accident without having a prior study for comparison.

Dr. Jeremy Comeaux also testified concerning his independent examination of Ms. Crawford on September 14, 2017, at which time she provided a negative history of neck or back pain prior to the accident. The examination of her neck revealed mild discomfort at the mid-neck, some decreased range of motion and some tenderness to palpation. Neurologically she was intact. Examination of the back reflected tenderness to palpation and pain with extension. Otherwise, he testified that she had a normal neurological exam. He also opined that the MRIs of

the back showed degenerative changes which pre-dated the accident and agreed that such degeneration was not surprising considering her weight. Degenerative findings were also present in her neck. He opined that the pain for which she received treatment was caused by the accident.

Conflicting evidence was introduced at trial regarding Ms. Crawford's complaints of pain. On October 13, 2015 (eight days after a scheduled visit with Dr. Turnipseed), Ms. Crawford completed a "History and Physical Examination Form" in connection with her enrollment in Emergency Medical Technician ("EMT") school. Ms. Crawford indicated that she was not taking any prescription medication, was not currently under the care of a physician, and did not have any disorder or disability that limited her physical activity or required special accommodations. She further denied currently having or having ever had any back injuries or any joint injuries and problems. The physical examination conducted on this date at Capital City Family Healthcare reflected no disorder of the spine. Ms. Crawford testified that she denied being treated for neck and back injuries on the "History and Physical Examination Form," because she felt she would not be accepted to EMT school due to her history of neck and back pain.

Subsequently, in April of 2017, prior to her September 14, 2017 evaluation by Dr. Comeaux and during her treatment by Dr. Turnipseed, Ms. Crawford applied for a job as a cashier at Lucky Dollar Casino. She completed an application for employment, which included medical history questions. Ms. Crawford denied currently or previously having a back or neck injury. She further denied being presently under any medical treatment by a doctor, taking any medication, and having ever received treatment for her back, neck or knee from a doctor or chiropractor. Ms. Crawford testified that she was not truthful in her application because she "had to get a job at that time."

Finally, testimony from Ms. Crawford concerning the impact that the

accident and her alleged injuries had on her life was scant. At the time of the accident, she was working at Wal-Mart. Although she continued in that employment, she worked in pain and managed with medication. Thereafter, she started EMT school and ultimately completed the program in December of 2015, finishing as a certified EMT. She had no physical limitations while working as a basic EMT at Acadian Ambulance. She testified that the schedule at Acadian Ambulance did not work out due to her children, but also indicated that she had multiple issues with her employment, one being that she realized lifting was an issue for her. She indicated she would like to go back to school to become a paramedic and had started that process. After her employment at Acadian, she also worked at Lucky Dollar Casino, St. Gabriel Prison, and Northridge Healthcare Center.

Upon consideration of the evidence presented, the jury concluded that the December 15, 2014 accident caused some injury to Ms. Crawford and awarded her $50,000.00 in past medical expenses. Ms. Crawford does not appeal this award. Rather, she argues that the jury's award of $1,000.00 in pain and suffering, past and future, with no other award for general damages is improperly inconsistent. Alternatively, she argues that the award of $1,000.00 in general damages is abusively low and an abuse of the jury's discretion.

In support of her argument, Ms. Crawford argues that a jury verdict awarding damages for treatment of pain and injury caused by an accident but failing to award a commensurate amount of general damages for the pain to which that treatment was addressed is, except in rare circumstances, an inconsistent verdict, citing *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So. 2d 70. In *Wainwright*, 774 So. 2d at 76, the Louisiana Supreme Court acknowledged that as a general proposition, such a jury verdict may be illogical or inconsistent, but held that it is not, as a matter of law, always erroneous. The court explained:

> [A] jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of defendant's fault. It may often be the case that such a verdict may not withstand review under the abuse of discretion standard. However, it would be inconsistent with the great deference afforded the factfinder by this court and our jurisprudence to state that, as a matter of law, such a verdict must always be erroneous. Rather, a reviewing court faced with a verdict such as the one before us must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion. Only after the reviewing court determines that the factfinder has abused its much discretion can that court conduct a *de novo* review of the record.

*Id.* The *Wainwright* court held that damage awards are dependent on the particular facts of the case and "there is no bright line rule at work." *Id.*

Based on the entirety of the evidence presented, the jury could have reasonably questioned Ms. Crawford's veracity and discounted her testimony with regard to her pain and suffering. The medical records indicate that she made inconsistent complaints of pain to various healthcare providers. While she complained of neck and back pain at the Emergency Room on December 15, 2014, when she presented to Dr. Thomas approximately two weeks later, her complaints were only of back pain. Following her January 27, 2015 appointment with Dr. Thomas, she did not seek medical attention for her back pain until she presented to Dr. Turnipseed on April 2, 2015, over two months later. Ms. Crawford pointed to no interim complaints to or treatment by physicians for injuries she allegedly sustained in the accident. On April 2, 2015, she indicated that the neck pain she experienced following the December 15, 2014 accident had resolved. Thereafter, on April 7, 2015, she advised Dr. Rathmann that she was experiencing neck and back pain, as well as knee pain. Dr. Rathmann testified that Ms. Crawford improved during the two months he treated her. On October 13, 2015, Ms. Crawford denied having any back injuries in a form she completed in connection with her enrollment in EMT school, and her physical examination was ultimately

reported as negative. On October 23, 2015, Dr. Turnipseed performed both a lumbar and cervical ESI. She continued treatment with Dr. Turnipseed throughout 2016, and underwent a L-RFA in March of 2017. In April of 2017, Ms. Crawford again denied having a back or neck injury or receiving treatment for such in an application for employment.

Here, the jury was in the best position to evaluate Ms. Crawford's credibility and to see the evidence firsthand. *Mitchell,* 184 So. 3d at 120. The jury heard Ms. Crawford admit that she lied about her medical condition on both a school application and on a job application. As noted above, the jury also heard evidence that Ms. Crawford gave inconsistent medical histories to medical providers and at least one physician opined that her pre-existing health conditions could have contributed to any general damages she sustained. Thus, based on this evidence, the jury could have reasonably doubted Ms. Crawford's credibility and discounted the medical evidence supporting her claim for general damages. Further, *Wainwright* and its progeny confirm that even a special damage award with *no* general damage award is not always an abuse of discretion. *A fortiori,* a special damage award with a *low* general damage award, as here, would even less likely be an abuse of discretion. See, e.g., *Mitchell,* 184 So. 3d at 120-21; *Harris v. Soulier,* 2013-1245 (La. App. 1 Cir. 5/2/14), 2014 WL 3557481, at *6 (unpublished). Thus, we find the jury did not abuse its discretion in its award of general damages and affirm the trial court's February 20, 2019 judgment.

### JNOV and Motion for New Trial

In her remaining assignments of error, Ms. Crawford contends that the trial court erred in applying the criteria used to grant or deny a JNOV, in failing to grant a JNOV in this case, and in denying her motion for new trial.

A JNOV is a procedural device authorized by La. C.C.P. art. 1811, by which the trial court may modify the jury's finding of fault or damages, or both, to correct

11

a legally erroneous jury verdict. See La. C.C.P. art. 1811F; *Barnett v. Woodburn*, 2020-0675 (La. App. 1 Cir. 4/16/21), __ So. 3d __, __, 2021 WL 1440376, at *6. A motion for new trial may be joined with a motion for judgment notwithstanding the verdict, or a new trial may be prayed for in the alternative. See La. C.C.P. art. 1811. A JNOV is warranted when the facts and reasonable inferences point so strongly and overwhelmingly in favor of the moving party that the court believes that reasonable jurors could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. *Davis v. Wal-Mart Stores, Inc.*, 2000-0445 (La. 11/28/00), 774 So. 2d 84, 89; *Barnett*, 2021 WL 1440376, at *6. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. *Davis*, 774 So. 2d at 89. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Id.* When the trial court denies a JNOV, the appellate court simply reviews the record to determine whether there is legal error or whether the trier of fact committed manifest error. *Barnett*, 2021 WL 1440376, at *6.

We found that the jury's verdict regarding damages was supported by the record and was not an abuse of discretion. Thus, the trial court's denial of Ms. Crawford's motion for JNOV and/or motion for new trial was not manifestly erroneous. Accordingly, we affirm the trial court's August 8, 2019 judgment.

## CONCLUSION

For the above and foregoing reasons, we affirm the February 20, 2019 and August 8, 2019 judgments. Costs of the appeal are assessed to Kiera Crawford.

**AFFIRMED.**

| KIERA CRAWFORD | STATE OF LOUISIANA |
|---|---|
| VERSUS | COURT OF APPEAL |
| SHELTER GENERAL INSURANCE COMPANY | FIRST CIRCUIT |
| | 2020 CA 0494 |



**HOLDRIDGE, J., dissents.**

I respectfully dissent in this case. It is my opinion that based on the entire record, the jury's determination that Ms. Crawford was entitled to $50,000.00 in medical expenses, but only $1,000.00 in general damages, is so inconsistent as to constitute an abuse of discretion. The jury determined that the medical treatment Ms. Crawford sought to alleviate her neck and back pain was causally related to the accident. To make that causation determination, the jury had to find that Ms. Crawford's complaints of neck and back pain were credible. Having made that determination, it was entirely inconsistent for the jury to find that Ms. Crawford was entitled to only $1,000.00 in general damages, given the extent of the medical treatment Ms. Crawford underwent to alleviate the pain the jury related to the accident in awarding her $50,000.00 in medical damages. Furthermore, the defendant did not appeal the award of $50,000.00 in medical expenses. Therefore, the option of reducing the award for medical expenses to correlate with the general damages award is not available to this court. For these reasons, I would find the jury abused its discretion in awarding only $1,000.00 in general damages under all of the circumstances of this case.